

1

Avis Copelin
144 N Valley St
Toluca Lake, CA 91505
818-396.2811

Ch 11 Debtor In Possession

2

3

4

5

6

7

**FILED**

**MAR 17 2014**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

8          UNITED STATES BANKRUPTCY COURT\

9      CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

10

11

12   Avis Copelin,

13                    Debtor In Possession,

14

15

16

17

18

19

20

21

22

23

24

25

Ch 11 Bankruptcy Case Number: 13-32580 RK

**MOTION FOR RECONSIDERATION OF
ORDER GRANTING RELIEF FROM STAY ---
UNLAWFUL DETAINER – HEARING DATE
FEBRUARY 25, 2014 – PROPERTY ADDRESS
4629 TALOFA AVE TOLUCA LAKE CA 91602**

JUDGE: HONORABLE ROBERT KWAN
DATE:
TIME:
LOCATION:

26   **COMES NOW**, Avis Copelin ("Copelin"), debtor, hereby submits this **MOTION FOR
27   RECONSIDERATION OF ORDER GRANTING RELIEF FROM STAY HEARING DATE
28   FEBRUARY 25, 2014 – UNLAWFUL DETAINER – PROPERTY ADDRESS 4629 TALOFA**

MOTION FOR RECONSIDERATION                    1

1 | **AVE TOLUCA LAKE CA 91602 ON BEHALF OF GREAT WESTERN CAPITAL LLC,**
2 | **AMBER INVESTMENTS GROUP LLC, AND NARA INVESTMENTS GROUP**
3 |

4 | Movant requests a Motion for Reconsideration on the following grounds:

5 | 1. At the time that the relief from stay was granted debtor was in a Chapter 7 bankruptcy. Debtor's

6 | Chapter 11 conversion was granted at a later hearing held the same day; therefore movant was

7 | not able to challenge Respondent's claim of interest in the property at the Motion for Relief from

8 | Stay Hearing. Movant submitted a Qualified Written Request to the Lender on or about March 3,

9 | 2014 with a 30 day response time. Debtor has also ordered an audit of the property. The

10 | preliminary findings of the audit have determined that at the time of the sale that the lender did

11 | not have a valid and legal interest in the property. The audit is expected to be completed within

12 | the next 1-2 weeks. Debtor requests that the automatic stay is reimposed so that debtor may have

13 | the opportunity to provide the findings from the audit to properly defend debtor's interest in the

14 | property; or that Respondents be required to provide documented evidence that the sale was legal

15 | and valid. Furthermore, Respondents currently have an unlawful detainer hearing scheduled for

16 | March 21, 2014. If an automatic stay is not imposed Respondents will proceed with the unlawful

17 | detainer action regardless of the fact that they are in willful violation of multiple state and federal

18 | statutes; as well as at least 3 consent orders.

19 | 2. Respondents are in violation of multiple Consent Orders including at least 2 Office of the

20 | Comptroller of the Currency Consent Orders; and a Federal Consent Order. Debtor has attached

21 | as Exhibit A Debtor's Application for Shortened Time and Notice of Motion of Intent to File

22 | Federal Lawsuit filed on February 21, 2014 providing evidence that Respondents are in violation

23 | of a federal consent order. Respondents are also in violation of at least 2 OCC Consent Orders.

MOTION FOR RECONSIDERATION                    2

1    The foreclosing lender, US Bank National Association, OCC Consent Order is attached hereto as

2    Exhibit B.

3.   Debtor has also attached in support of this motion as Exhibit C her original Opposition to

4    Respondents Motion for Relief From Stay dated February 18, 2014. Debtor's opposition

5    provided a thorough explanation and argument that was denied by the court due to the fact that

6    debtor did not have authority at the time to challenge Respondent's claim of interest in the

7    property. Debtor has now successfully converted to a Chapter 11 bankruptcy and requests that

8    the court review the information submitted in the previous Opposition dated February 18, 2014

9    in support of Debtor's Motion for Reconsideration.

4.   The subject property is necessary for a proper reorganization for Debtor's Chapter 11

11   bankruptcy. The subject property can be renovated to add value to the debtor's estate; and the

12   property was the subject of a wrongful foreclosure in violation of multiple state and federal

13   statutes for which monetary sanctions and damages can be obtained. The monetary sanctions and

14   damages are necessary for debtor's estate and will assist with offsetting the indebtedness of the

15   estate. Debtor requests that the automatic stay be reimposed so that debtor can properly

16   challenge the wrongful foreclosure in Federal Court as the legal action could require up to 2

17   years for a resolution. The lawsuit is imperative as the property is a necessary entity for Debtor's

18   estate; including the fact that debtor will suffer irreparable harm if the automatic stay is not

19   granted due to the illegalities of the foreclosure sale.

5.   Debtor further requests that the automatic stay be reimposed pending the outcome of the

21   complete findings of the audit and the QWR submitted to the lender; both of which are expected

22   to be within the next 3 weeks.

MOTION FOR RECONSIDERATION                3

1     6.  Lastly debtor requests that the Court provide the following relief:

2     **The Court reimpose the automatic stay for property address 4629 Talofa Ave, Toluca Lake**
3  **CA 91602 until the outcome of the federal lawsuit is determined or the matter is settled; or in the**
4  **interim reimpose the stay temporarily pending the outcome of the findings of the lender QWR and**
5  **the audit at which time the stay can be granted until the outcome of the federal lawsuit is**
6  **determined or the matter is settled; or until a federal lawsuit can be filed and an injunction can be**
7  **secured. and any and all other appropriate relief, including but not limited to all fees and costs**
8  **incurred in this action.**

9

10

11  Date: 3/17/2014

12                                   Avis Copelin, Debtor Pro Per

13

14

MOTION FOR RECONSIDERATION           4

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10153 1/2 Riverside Dr #189 Toluca Lake CA 91602

A true and correct copy of the foregoing document entitled: ~~NOTICE OF~~ MOTION FOR (specify name of motion)
Reconsideration of Order Granting Relief From Stay - Unlawful Detainer - Granted February 25, 2014

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (date) 03/17/2014 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | | |
|---|---|---|
| Judge Robert Kwan | Carol Unruh Esq | US Trustee |
| 255 Temple St #1682 | 3000 S Robertson Blvd #215 | 915 Wilshire Blvd #1850 |
| Los Angeles CA 90012 | Los Angeles CA 90034 | Los Angeles CA 90017 |

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 03/17/2014 | Christian Copelin | |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br>Avis Copelin<br>144 N Valley St<br>Burbank CA 91505<br>818.600.1024<br><br><br><br><br><br>☒ *Individual appearing without attorney*<br>☐ *Attorney for:* | FOR COURT USE ONLY<br><br>┌─────────────────────────┐<br>**FILED**<br>**FEB 21 2014**<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY:          Deputy Clerk<br>└─────────────────────────┘ |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION  ☒

| | |
|---|---|
| In re:<br><br>AVIS RICHELLE COPELIN | CASE NO.: 13-32580 RK<br>CHAPTER: 7 ☒ |
| | **APPLICATION FOR ORDER SETTING<br>HEARING ON SHORTENED NOTICE<br>[LBR 9075-1(b)]** |
| Debtor(s). | |

1.  Movant applies under LBR 9075-1(b) for an order setting a hearing on shortened notice on the following motion:

    a.  Title of motion: <u>MOTION FOR INTENT TO FILE FEDERAL LAWSUIT</u>

    b.  Date of filing of motion: <u>2/21/2014</u>

2.  Compliance with LBR 9075-1(b)(2)(A): (*The following three sections must be completed*):

    a.  Briefly specify the relief requested in the motion:
       Continuance of automatic stay; any other appropriate relief

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*Exhibet A*

b.  Identify the parties affected by the relief requested in the motion:
    Movants for A Relief from Stay - Hearing Date February 25 2014: Great Western Capital
    LLC, Amber Investments Group, Nara Investments Group LLC.

c.  State the reasons necessitating a hearing on shortened time:
    A Motion for Relief from Stay will be heard on February 25, 2014; and Debtor has a hearing
    for Chapter 11 Conversion on February 25, 2014. Debtor will suffer undue and significant
    hardship if a relief from stay is granted as they will be then be able to move forward with an
    unlawful detainer against Debtor.

3.  Compliance with LBR 9075-1(b)(2)(B): The attached declaration(s) justifies setting a hearing on shortened notice, and
    establishes a *prima facie* basis for the granting of the motion.

4.  Movant has lodged a proposed Order Setting Hearing on Shortened Notice on mandatory form F 9075-1.1.ORDER
    .SHORT.NOTICE

Date: 2/21/2014

_____
Printed name of law firm

_____
Signature of individual Movant or attorney for Movant

Avis Copelin
_____
Printed name of individual Movant or attorney for Movant

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                              Page 2                    F 9075-1.1.APP.SHORT.NOTICE

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document entitled: **APPLICATION FOR ORDER SETTING HEARING ON SHORTENED NOTICE [LBR 9075-1(b)]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (date) 02/21/2014___, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Carol G Unruh, Esq.                          Judge Robert Kwan
Law Offices of Carol G Unruh                 255 E Temple St
3000 S Robertson Blvd Ste 215                Los Angeles CA 90012
Los Angeles CA 90034

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 02/21/2014 | Christian Copelin | *signature* |
| Date | Printed Name | Signature |

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

I, Avis Copelin, the debtor in the bankruptcy case number 13-32580; declare under penalty of perjury that the foregoing is true and correct:

I was the legal owner and the trustor of the Deed of Trust dated August 30, 2005 for the property commonly known as 4629 Talofa Ave, Toluca Lake CA 91602 at the time of the alleged foreclosure sale held on or about August 12, 2013.

I was served with a Motion for Relief from Stay dated January 18 2014 by Movants Great Western Capital LLC, Amber Investments Group LLC and Nara Investments Group by their counsel Carol G Unruh. Debtor has not been discharged as to the subject property. Debtor was discharged on December 30, 2013; however, the subject property was not included in the bankruptcy until on or about January 13, 2014.

The property was wrongfully foreclosed upon on or about August 12, 2013. On or about August 13, 2013 between approximately 10am-12pm I received notice from Movants that they were the new owners of the property subject to a foreclosure sale that occurred the previous day. Immediately upon receipt of the notice, Debtor made a claim of possessory interest by responding with telephone calls to an office number and a representative named Juan Zermeno. An email was also forwarded to Mr. Zermeno, as well as, a facsimile to the Movant's office. All of my responses indicated that the foreclosure sale was in violation of multiple state and federal statutes and Movants were immediately put on notice that they would be held liable for being in violation of the statutes; if they concluded the foreclosure transaction. Debtor did not receive any response to the subject notices. The initial notice of possessory interest dated August 13, 2013 was provided prior to completion of the foreclosure transaction; therefore Movants do not qualify as bona fide 3rd party purchasers. (Notices Attached as Exhibit A).

I subsequently received a 24 Hour Notice of Abandonment on August 23, 2013 from legal counsel for Movants, David Rendall, who was retained to file an unlawful detainer action against the property. Notices were again sent out to all interested parties, including legal counsel regarding my claim of possessory interest in the property. Movants are alleging that Debtor did not claim a possessory interest in the property until 3 months after an unlawful detainer lawsuit was filed. As previously indicated, Debtor notified Movants, as well as, their agents and representatives, of a possessory interest in the property on multiple occasions prior to the date on which a claim of right to possession was filed in the unlawful detainer action. (Notices attached as Exhibit A).

Furthermore, from approximately August-October 2013, Debtor had multiple telephone and email communications with Jeff Brandolino, a representative who contacted Debtor on behalf of Movant regarding the subject property. Movants contacted Debtor through the representative to negotiate a settlement regarding the property. Therefore, Movants' allegations that Debtor did not claim a possessory interest in the property prior to filing a claim of right to possession in the unlawful detainer action are not factual. (Notices attached hereto as Exhibit A).

Regardless of the multiple communications notifying Movants of a possessory interest in the property and the illegalities regarding the sale, Movants chose to ignore the notices and recorded the deed of trust on August 15, 2013 (Attached hereto as Exhibit B). The subject deed of trust is invalid because it does not provide evidence of value for consideration of the property; and because the foreclosure sale was in violation of multiple state and federal statutes. In particular the foreclosure sale was in violation of a federal consent decree.

Regardless of the fact that Movants were notified of Debtor's claim regarding the property, and the obvious fact that Debtor's name was indicated on the Trustee's Deed Upon Sale that they subsequently recorded in the Los Angeles County Recorder's office; they intentionally and deliberately chose not to name Debtor in the unlawful detainer action. Furthermore, Movants were also notified that debtor was the sole occupant of the property; yet they failed to properly name Debtor as a party to the unlawful detainer action. California state law mandates that any defendant whose identity is known must be named in a lawsuit. Regardless, of the fact that Movants received multiple communications by telephone, email, and fax; they still intentionally refused to name her in the unlawful detainer action.

Movants further allege that an unlawful detainer proceeding is the proper venue to determine possessory interest in the property. It is common knowledge, that an unlawful detainer court is not the proper venue to determine a possessory interest; particularly when the possessory interest in the subject property is in dispute. The bankruptcy court holds jurisdiction regarding matters where a possessory interest is the subject of dispute and has the authority to provide automatic stay protection to the property on behalf of a Debtor's estate to prevent any further unlawful activity. If a relief from stay is granted, Debtor would suffer undue hardship as a result of the Movants' deliberate and intentional pursuit to proceed with an unlawful detainer action regardless of the fact that they are in violation of multiple state and federal statutes.

Lastly, Debtor has requested a Chapter 11 conversion which is the proper venue to provide protection to Debtor's estate until Debtor has been able to properly challenge the illegalities regarding the wrongful sale of her property which rightfully belongs to Debtor's estate. Debtor is requesting that this matter be continued until a decision has been made in the Chapter 11 conversion hearing.

Executed this 21 Day of February 2014 in the County of Los Angeles, in the State of California.


Avis Copelin, Debtor

Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address

Avis Copelin
144 N Valley St
Burbank CA 91505
818.600.1024

FOR COURT USE ONLY

☒ *Individual appearing without attorney*
☐ *Attorney for:*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

In re:

AVIS RICHELLE COPELIN

CASE NO.: 13-32580 RK

CHAPTER: 7

**NOTICE OF MOTION FOR:**
INTENT TO FILE FEDERAL LAWSUIT

*(Specify name of Motion)*

DATE:
TIME:
COURTROOM:
PLACE:

Debtor(s).

1.  **TO** *(specify name)*: Amber Investments Group/Great Western Capital LLC/Nara Investments Group LLC

2.  NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3.  **Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                          Page 1                          F 9013-1.1.HEARING.NOTICE

4.  **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date.  If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5.  **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.

Date:  02/21/2014

_____
Printed name of law firm

_____
Signature

Avis Copelin Debtor
Printed name of attorney

___

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION FOR** (*specify name of motion*) Motion for Intent to File Federal Lawsuit _____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 02/21/2014  , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Carol G Unruh Esq.  
Law Offices of Carol G Unruh  
3000 S Robertson Blvd Ste 215  
Los Angeles CA 90034  

Judge Robert Kwan  
255 E Temple St, Courtroom 1675  
Los Angeles CA 90012  

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 02/21/2014 | Christian Copelin | *Christian Copelin* (signature) |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

1  Avis Copelin
2  144 N Valley St
   Toluca Lake, CA 91505
3  818-600-1024
4
   Debtor
5
6
7
8          UNITED STATES BANKRUPTCY COURT\
9    CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION
10
11
   Avis Copelin,
12
13          Debtor,              Bankruptcy Case Number: 13-32580 RK
14
15
16                               **MOTION TO ACCEPT AND TAKE NOTICE
                                 OF DEBTOR'S NOTICE TO THE COURT AND
17                               ALL PARTIES OF INTENT TO FILE
                                 FEDERAL LAWSUIT REGARDING
18                               PROPERTY ADDRESS 4629 TALOFA AVE
                                 TOLUCA LAKE CA 91602 ASSERTING
19                               RESPONDENTS, THE HONORABLE COURT,
                                 *et al.*, ARE IN VIOLATION OF UNITED
20                               STATES OF AMERICA CONSENT ORDER**
21
22
23
24
25
26  **COMES NOW**, Avis Copelin ("Copelin"), debtor, hereby submits this **MOTION TO ACCEPT AND**
27  **TAKE NOTICE OF DEBTOR'S NOTICE TO THE COURT AND ALL PARTIES OF  INTENT**
28  **TO FILE FEDERAL LAW SUIT ASSERTING RESPONDENTS AS MOVANTS FOR MOTION**
29  **FOR RELIEF FROM STAY FILED JANUARY 18, 2014 GREAT WESTERN CAPITAL LLC,**

NOTICE OF INTENT                    1

**AMBER INVESTMENTS GROUP LLC, AND NARA INVESTMENTS GROUP; in association with BANK OF AMERICA, US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE FIRST FRANKLIN MORTGAGE LOAN TRUST,** Mortgage Pass Through Certificate, Series 2005-FF10; Select Portfolio Servicing, Inc; First Franklin A Division of Nat City Bank of IN; Ronald D Roup, A Law Corporation; **THE HONORABLE COURT, ARE IN VIOLATION OF UNITED STATES OF AMERICA CONSENT ORDER** and hereby states the following in support thereof:

1. Respondents, *et al.*, are in flagrant violation of UNITED STATES OF AMERICA, *et al.* v. BANK OF AMERICA, N.A., *et al.*, case # 12 0361 ("CONSENT ORDER"), pages 1.- 8. **EXHIBIT 1.,** executed by Defendants, *et al.*, including but not limited BANK OF AMERICA, N.A. *et al.*, in the United States District Court for the District of Columbia. Furthermore, the CONSENT ORDER is endorsed by the U.S. Attorney and each Attorney General of the 49 States of the Union, and specifically by and for the State of California by Michael A. Troncoso, Senior Counsel to the Attorney General, excerpted Pg. 20, and excerpted Pg. 91, signed by Neil A. Cotty, CAO, Bank of America, N.A., ALL agreeing to the CONSENT ORDER and terms.

2. The Consent Order is resulting from a ruling in UNITED STATES OF AMERICA, *et al.* v. BANK OF AMERICA, N.A., *et al.,* case # 12 0361, ordering the Defendants BANK OF AMERICA, N.A., *et al.*, to include BANK OF AMERICA, N.A. and their agents to refrain from engaging in certain unlawful and unethical activities, which they are continuing, thus the CONSENT ORDER is being violated by the named Respondents in association with Bank of America, US Bank, *et al.* in the above styled case. *Respondents* US BANK, et al are agents of Bank of America as identified in the CONSENT ORDER.

3. Debtor is a homeowner, whose rights have been set aside by certain court actions that should

1   have been curtailed by the CONSENT ORDER, but these actions continue. All Respondents are

2   acting in absolute defiance of the Court order issued in April 2012 resulting from UNITED

3   STATES OF AMERICA, *et al.* v. BANK OF AMERICA BANK, N.A., *et al.*, ordering BANK

4   OF AMERICA, N.A., *et al*, to refrain from foreclosing on homeowners property when they do

5   not have a documented property interest in the note and mortgage or deed of trust.

6
7   4. Respondents in association with BANK OF AMERICA, US BANK et al in this California

8   foreclosure action did not meet their burden under state law or the common law to prove that

9   BANK OF AMERICA, US BANK et al had the power of sale and the authority to act to

10   enforce the Note and Deed of Trust and establish that their alleged interest in the Note and

11   Mortgage was "duly perfected". The Respondents must prove the sale was conducted in

12   compliance the law and the terms of the Deed of Trust followed by a purchase and the Debtor

13   can raise objections on that phase on the issue of title, see *Cheney v. Trauzettel*, 9 Cal 2d 158,

14   at 159-160 (1937). In a foreclosure, Title is duly perfected when all steps have been taken to

15   make it perfect; that is to convey to purchaser that which he has purchased is valid and good

16   beyond all reasonable doubt, and when the foreclosing party has standing and capacity. The

17   foreclosure action against the Debtor by the Respondents in association with Bank of America,

18   US Bank et al is a violation of the CONSENT ORDER pursuant to the CONSENT ORDER at,

19   . CASE 12 0361 Sections 1-A-1 and 1-C. Exhibit A of said CONSENT ORDER page A – 8.

20   **EXHIBIT 2**. states as follows:

21       **Section 1A-1**

22       ...and notices of default, notices of sale and similar notices submitted by or
23       on behalf of Servicer in non-judicial foreclosures are accurate and complete
24       and are supported by competent and reliable evidence. Before a loan is

referred to non-judicial foreclosure, Servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

In addition, Subsection C states a requirement to provide a chain of title for the note as follows:

**1. Servicer shall implement processes to ensure that Servicer or theforeclosing entity has a documented enforceable interest in the promissory Note and Mortgage (or deed of trust)** under applicable state law, or is otherwise a proper party to the foreclosure action.

**2. Servicer shall include a statement in a pleading, affidavit of indebtedness or similar affidavits in court foreclosure proceedings setting forth the basis for asserting that the foreclosing party has the right to foreclose.**

3. Servicer shall set forth the information establishing the party's right to foreclose as set forth in I.C.2 in a communication to be sent to the borrower as indicated in I.A.18.

5.                                                                              \

**If the original Note is lost or otherwise unavailable, Servicer shall comply with applicable law in an attempt to establish ownership of the Note and the right to enforcement.** Servicer shall ensure good faith efforts to obtain or locate a Note lost while in the possession of Servicer or Servicer's agent and shall ensure that Servicer and Servicer's agents who are expected to have possession of Notes or assignments of Mortgage on behalf of Servicer adopt procedures that are designed to provide assurance that the Servicer or Servicer's agent would locate a Note or assignment of Mortgage if it is in the possession or control of the Servicer or Servicer's agent, as the case may be. In the event that Servicer prepares or causes to be prepared a lost Note or lost assignment affidavit with respect to an original Note or assignment lost while in Servicer's control, Servicer shall use good faith efforts to obtain or locate the Note or assignment in accordance with its procedures. In the affidavit, sworn statement or other filing documenting the lost Note or assignment, Servicer shall recite that Servicer has made a good faith effort in accordance with its procedures for locating the lost Note or assignment. (Emphasis Added.)

Hence, the Respondents in association with BANK OF AMERICA, US BANK et al did not comply

with the law or the terms of the CONSENT ORDER, therefore, the foreclosure action, and subsequent

1  attempt to evict the Debtor were perpetrated without regard for law and the terms of the CONSENT

2  ORDER, these action(s) being ineffective, unlawful and in complete and utter contempt of the

3  CONSENT ORDER.

4

5     6.  The Respondents are using this honorable court as an instrument of fraud, using color of law

6        and unlawful techniques to convince this honorable court, *et al.*, that Respondents in association

7        with Bank of America, US Bank et al possess *locus standi* to foreclose and subsequently evict,

8        which Respondent(s) do not. A Judgment or any interlocutory ruling in favor of the

9        Respondent(s) at this time would be a misplaced ruling in complete disregard of the CONSENT

10       ORDER and would result in certain permanent and grievous injury to the Debtor.

11

12    7.  On information and belief, the Respondents do not and could not be acting on or on behalf of,

13       "...the owner of the note and mortgage.", and on further information and belief the note has

14       been converted to a security, governed by Unites States Securities laws, whereas no 'holder' of

15       the original note can lawfully enforce said original note.  Therefore, Respondents cannot and

16       will never possess *locus standi* to prosecute Debtor.

17

18    8.  Respondents in association with Bank of America, US Bank et al have alleged that Bank of

19       America, US BANK et al have the NOTE and because of such, somehow possess *locus standi*,

20       which they simply do not. This is the Respondent(s) in association with Bank of America, US

21       Bank et al fraudulently stated position of standing to deny bifurcation of the note and deed of

22       trust. Bank of America, US Bank et al do not have the NOTE, it is legally impossible that Bank

1   of America, US Bank et al would lawfully possess the Note, the Note no longer exist as the

2   original 'Note'.  Debtor hereby puts Respondents and Bank of America, US Bank, et al **TO**

3   **STRICT PROOF THEREOF**, produce and portray to the Honorable Court the original "wet

4   ink" NOTE.

5

6   9.  Respondents, *et al.*, be forewarned any attempt to portray a non-existent note as genuine to the

7   Honorable Court will be met with the utmost scrutiny by the Debtor,  including but not limited

8   to forensic examination by an expert in the field of Counterfeit Securities and Forgery.  The

9   U.S. laws and criminal punishments regarding counterfeiting securities and negotiable

10   instruments are interchangeable with those laws representing counterfeiting United States

11   currency, *US Code Title 18.*

12

13   10. Respondents in association with Bank of America, US Bank et al are using the California non-

14   judicial foreclosure process and the honorable court as a tool and instrument of fraud to further

15   perpetrate their illegal egregious actions upon the Debtor in violation of the CONSENT

16   ORDER.  As a result, Debtor hereby moves the court to **ACCEPT AND TAKE NOTICE OF**

17   **DEBTOR'S NOTICE TO THE COURT AND ALL PARTIES OF INTENT TO FILE**

18   **FEDERAL LAW SUIT ASSERTING RESPONDENTS, THE HONORABLE COURT,** *et*

19   *al.,* **ARE IN VIOLATION OF UNITED STATES OF AMERICA CONSENT ORDER** to

20   be filed in the United States District Court for the District of Columbia, for enforcement of the

21   CONSENT ORDER and damages, thereby naming as Defendants, BANK OF AMERICA,

22   N.A., US Bank National Association, As Trustee for the First Franklin Mortgage Loan Trust,

NOTICE OF INTENT                           6

1   Mortgage Pass Through Certificate, Series 2005-FF10; Select Portfolio Servicing, Inc.; First

2   Franklin A Division of Nat City Bank of IN, Great Western Capital, LLC, Nara Investments

3   Group LLC, Amber Investments Group, *et al.*, specifically naming every involved party and

4   agent including but not limited to Ronald D Roup, a Law Corporation, Sheriff Leroy D. Baca,

5   Sheriff, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, Law Firms, individual

6   Attorneys representing the Law Firms, *et al.*

7

8   11. Crucially relevant, the Debtor was induced into a complex securitization transaction where the

9   Debtor unwittingly and unknowingly became a party via '**fraud by omission**'. The Debtor did

10   not consent to becoming a party to an unknown and complex securitization transaction that

11   forever clouds title to Debtor's home. Moreover, no verbiage within the Debtor's Deed of Trust

12   indicated that such complex transaction was agreed to by the Debtor at any time. Undoubtedly,

13   the Debtor became a party to this transaction which was and continues to be obfuscated by the

14   Respondents in association with Bank of America, US Bank et al to both the Debtor and the

15   honorable court, *et al.*, which was obfuscated through a non-judicial foreclosure and would

16   be further obfuscated through an unlawful detainer action.

17

18   12. In a recently uncovered document from U.S. BANK N.A., titled, "Role of the Corporate

19   Trustee" brochure, **EXHIBIT 3.**, which makes certain extraordinary admissions, several of

20   which squarely disprove and nullify the holdings of various courts around the country which

21   have taken the position that the borrower "is not a party to" the securitization and is thus not

22   entitled to discovery or challenges to the mortgage loan transfer process. The first heading of

23   the brochure is styled "Distinct Party Roles". Moreover, the first sentence of this heading states:

"Parties involved in a MBS transaction include the **borrower**, the

originator, the servicer and the trustee, each with their own distinct

roles, responsibilities and limitations."

MBS is defined at the beginning of the brochure as the sale of "Mortgage Backed Securities in

the capital markets". The fourth page of the brochure also identifies the "Parties to a Mortgage

Backed Securities Transaction", with the **first being the "Borrower"**, followed by the

Investment Bank/Sponsor, the Investor, the Originator, the Servicer, the Trust (referred to

"generally as a special purpose entity, such as a Real Estate Mortgage Investment Conduit

(REMIC)), and the Trustee (stating that "the trustee does not have an economic or beneficial

interest in the loans").


13. Undoubtedly, the Debtor was induced into a complex securitization transaction where she

unwittingly and unknowingly became a party via '**fraud by omission**'. The Debtor did not

consent to becoming a party to an unknown and complex securitization transaction that forever

clouds title to their home, and no verbiage within the Debtor's Deed of Trust indicated that such

complex transaction was agreed to by the Debtor. Once examined, the US BANK document

proves without doubt that the **Debtor became a party** to this transaction which was obfuscated

by the Respondents in association with US Bank et al including but not limited to *Prima Facie*

statements made by "US BANK" in their "Role of the Corporate Trustee" brochure, **EXHIBIT

3.**


14. Furthermore, should the Honorable Court continue to acquiesce to the illegal and invalid

NOTICE OF INTENT                                    8

1    prosecution of the Debtor by any Respondent(s), and the Clerk of Court, the Honorable

2    Court and the Sheriff of Los Angeles County proceed with the unlawful detainer action and

3    eventually cause further harm to the Debtor and her interest in the real property and

4    subsequently evict the Debtor from the property, Debtor will be compelled to join the

5    Honorable Court and the Clerk of Court to the Federal Law Suit. Each and every Participant

6    in violation of the Consent Judgment is liable for damages.

7

8    15. *ADDITIONAL FACTUAL CIRCUMSTANCES* that have not and cannot be repudiated: The

9    Respondents in association with Bank of America, US Bank et al do not have the Original

10   Deed of Trust or the Original Note and their position is moot until such time as the originals

11   of both are produced.  The following UNITED STATES SUPREME COURT RULING IS

12   SPECIFIC TO THESE CIRCUMSTANCES;

13

14   **UNITED STATES SUPREME COURT RULING:**

15   *Carpenter v. Longan* 16 Wall. 271,83 U.S. 271, 274, 21 L.Ed. 313 (1872), the U.S. Supreme
16   Court stated:
17
18       **"The note and mortgage are inseparable; the former as essential,**
19       **the latter as an incident. An assignment of the note carries the**
20       **mortgage with it, while assignment of the latter alone is a nullity."**
21
22   An obligation can exist with or without security. With no security, the obligation is unsecured

23   but still valid. A security interest, however, cannot exist without an underlying existing

24   obligation. It is impossible to define security apart from its relationship to the promise or

25   obligation it secures. The obligation and the security are commonly drafted as separate

26   documents – typically a promissory note and a deed of trust. If the creditor transfers the note but

1  not the mortgage, the transferee receives a secured note; the security follows the note, legally if

2  not physically. If the transferee is given the mortgage without the note accompanying it, the

3  transferee has no meaningful rights except the possibility of legal action to compel the transferor

4  to transfer the note as well, if such was the agreement. (Kelley v. Upshaw 91952) 39 C.2d 179,

5  246 P.2d 23; *Polhemus v. Trainer* (1866) 30C 685).

6

7  16. Respondents in association with Bank of America, US Bank et al assert that Bank of America,

8    US Bank, et al are somehow the "holder" and "bearer" of a 'note', which the Debtor wholly

9    rejects, factually the note has been converted into a security and has been sold to a 'mortgage

10   backed security' (MBS), therefore, it would be a lawful impossibility to "hold" or "bear" a 'note'

11   that no longer is an original 'note' as defined by fact and law. The Respondents continue to

12   assert that hearsay is an acceptable conduit for judgment in their favor; this could be no further

13   from the truth.

14

15   WHEREFORE, THE DEBTOR MOVES THIS COURT TO **ACCEPT AND TAKE NOTICE OF**
16 **DEBTOR'S NOTICE TO THE COURT AND ALL PARTIES OF INTENT TO FILE FEDERAL**
17 **LAW SUIT ASSERTING RESPONDENTS IN ASSOCIATION WITH BANK OF AMERICA,**
18 **US BANK, SELECT PORTFOLIO SERVICING, THE HONORABLE COURT, *et al.*, ARE IN**
19 **VIOLATION OF UNITED STATES OF AMERICA CONSENT ORDER; and,**
20
21   **The Court continue debtor's automatic stay; and any and all other appropriate relief,**
22 **including but not limited to all fees and costs incurred in this action.**
23

24
25  Date: 1/21/2014                          _Avis Copelin (signature)_
26
27                                          Avis Copelin, Debtor Pro Per

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Avis Copelin<br>144 N Valley St<br>Burbank CA 91505<br>818.600.1024<br><br><br><br>☒ *Individual appearing without attorney*<br>☐ *Attorney for:* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br>AVIS RICHELLE COPELIN | CASE NO.: 13-32580 RK<br>CHAPTER: 7 |
|---|---|
| | **ORDER:**<br>☐ **GRANTING APPLICATION AND SETTING HEARING ON SHORTENED NOTICE**<br>☐ **DENYING APPLICATION FOR ORDER SETTING HEARING ON SHORTENED NOTICE**<br><br>**[LBR 9075-1(b)]** |
| Debtor(s). | |

LODGED
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
Deputy Clerk
FEB 21 2014

Movant (name): AVIS COPELIN

1. Movant filed the following motion together with supporting declarations and (if any) supporting documents:

   a. *Title of motion:* Motion for Intent to File Federal Lawsuit

   b. *Date of filing of motion:* 2/21/2014

2. Pursuant to LBR 9075-1(b), movant also filed an Application for Order Setting Hearing on Shortened Notice (Application) together with supporting declaration(s):

   *Date of filing of Application:* 2/21/2014

3. Based upon the court's review of the Application, it is ordered that:

   a. ☐ The Application is denied. The motion may be brought on regular notice pursuant to LBRs.

   b. ☐ The Application is granted, and it is further ordered:

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

(1) ☐  A hearing on the motion will take place as follows:

| Hearing date: | Place: |
|---|---|
| Time: | ☐ **255 East Temple Street, Los Angeles, CA 90012** |
| Courtroom: | ☐ **21041 Burbank Boulevard, Woodland Hills, CA 91367** |
| | ☐ **3420 Twelfth Street, Riverside, CA 92501** |
| | ☐ **411 West Fourth Street, Santa Ana, CA 92701** |
| | ☐ **1415 State Street, Santa Barbara, CA 93101** |

(2) ☐  No later than the deadlines given, **telephonic notice** of the hearing must be provided to all persons/entities listed:

| (A) *Deadlines:* | (B) *Persons/entities to be provided with telephonic notice:* |
|---|---|
| Date: | |
| Time: | |
| | ☐ See attached page |
| | (C) *Telephonic notice is also required upon* the United States trustee |

(3) ☐  No later than the deadlines given, **written notice of the hearing** and a copy of this order must be served upon all persons/entities listed using:    ☐ one of the methods checked    ☐ all of the methods checked

(A) ☐ Personal Delivery    ☐ Overnight Mail    ☐ First class mail    ☐ Facsimile*    ☐ Email*

| (B) *Deadlines:* | (C) *Persons/entities to be served with written notice and a copy of this order:* |
|---|---|
| Date: | |
| Time: | |
| | ☐ See attached page |
| | (D) *Service is also required upon:* |
| | — United States trustee (*electronic service is not permitted*) |
| | — Judge's copy personally delivered to chambers (*see Court Manual for address*) |

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2013                              Page 2                              F 9075-1.1.ORDER.SHORT.NOTICE

(4) ☐ No later than the deadlines given, a copy of the motion, declarations, and supporting documents (if any), must be served on all persons/entities listed using: ☐ one of the methods checked   ☐ all of the methods checked

(A) ☐ Personal Delivery  ☐ Overnight Mail   ☐ First Class Mail   ☐ Facsimile*   ☐ Email*

| (B) *Deadlines:*  Date:  Time: | (C) *Persons/entities to be served with motion, declarations, supporting documents:*  ☐ See attached page  (D) *Service is also required upon:*  – United States trustee *(no electronic service permitted)*  – Judge's copy personally delivered to chambers  *(see Court Manual for address)* |
|---|---|

(5) ☐ Regarding opposition to the motion

☐ opposition to the motion may be made **orally** at the hearing

☐ no later than the deadlines given, **written opposition to the motion** must be filed with the court and served upon all persons/entities listed using: ☐ one of the methods checked   ☐ all of the methods checked

(A) ☐ Personal Delivery  ☐ Overnight Mail   ☐ First Class Mail   ☐ Facsimile*   ☐ Email*

| (B) *Deadlines:*  Date:  Time: | (C) *Persons/entities to be served with written opposition to the motion:*  – movant's attorney (or movant, if movant is not represented by an attorney)  (D) *Service is also required upon:*  – United States trustee *(electronic service is not permitted)*  – Judge's copy personally delivered to chambers  *(see Court Manual for address)* |
|---|---|

(6) ☐ Regarding a reply to an opposition:

☐ a reply to opposition may be made **orally** at the hearing.

☐ no later than the deadlines given, a **written reply to an opposition** must be filed with the court and served on all persons/entities listed using: ☐ one of the methods checked   ☐ all of the methods checked

(A) ☐ Personal Delivery  ☐ Overnight Mail   ☐ First Class Mail   ☐ Facsimile*   ☐ Email*

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2013                                    Page 3                          F 9075-1.1.ORDER.SHORT.NOTICE

| (B) *Deadlines:* | (C) *Persons/entities to be served with written reply to opposition:* |
|---|---|
| Date: | – All persons/entities who filed a written opposition |
| Time: | |
| | (D) *Service is also required upon:*<br>– United States trustee *(electronic service is not permitted)*<br>– Judge's Copy personally delivered to chambers<br>(see Court Manual for address) |

(7) ☐ Other requirements:

(8) ☐ No later than the deadlines given, movant must file a **Declaration of Notice and Service** establishing that telephonic notice, written notice, and service of the motion and this order was completed as set forth above, and a **judge's copy** of the Declaration of Notice and Service must be personally delivered to the judge's chambers:

> ☐ at least 2 days before the hearing.
>
> ☐ no later than:    Date:         Time:

* Service by electronic means (facsimile or email) requires compliance with F.R.Civ.P. 5(b)(2)(E).

Date: _____

_____
United States Bankruptcy Judge

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2013                          Page 4                          F 9075-1.1.ORDER.SHORT.NOTICE

**UNITED STATES OF AMERICA**
**DEPARTMENT OF THE TREASURY**
**COMPTROLLER OF THE CURRENCY**

| | |
|---|---|
| **In the Matter of:** )<br><br>)<br><br>)<br>U.S. Bank National Association )<br>Cincinnati, Ohio )<br>and )<br>U.S. Bank National Association ND )<br>Fargo, North Dakota )<br>)<br>) | AA-EC-11-18 |

## CONSENT ORDER

The Comptroller of the Currency of the United States of America ("Comptroller"),

through his national bank examiners and other staff of the Office of the Comptroller of the

Currency ("OCC"), as part of an interagency horizontal review of major residential mortgage

servicers, has conducted an examination of the residential real estate mortgage foreclosure

processes of U.S. Bank National Association, Cincinnati, Ohio and U.S. Bank National

Association ND, Fargo, North Dakota (collectively, "Bank"). The OCC has identified certain

deficiencies and unsafe or unsound practices in residential mortgage servicing and in the Bank's

initiation and handling of foreclosure proceedings. The OCC has informed the Bank of the

findings resulting from the examination.

The Bank, by and through its duly elected and acting Board of Directors ("Board"), has

executed a "Stipulation and Consent to the Issuance of a Consent Order," dated April 13, 2011

("Stipulation and Consent"), that is accepted by the Comptroller. By this Stipulation and

Consent, which is incorporated by reference, the Bank has consented to the issuance of this

Consent Cease and Desist Order ("Order") by the Comptroller. The Bank has committed to

taking all necessary and appropriate steps to remedy the deficiencies and unsafe or unsound

Exhibit B

practices identified by the OCC, and to enhance the Bank's residential mortgage servicing and foreclosure processes. The Bank has begun implementing procedures to remediate the practices addressed in this Order.

## ARTICLE I

## COMPTROLLER'S FINDINGS

The Comptroller finds, and the Bank neither admits nor denies, the following:

(1) The Bank is among the largest servicers of residential mortgages in the United States and services a portfolio of 1,400,000 residential mortgage loans. During the recent housing crisis, a large number of residential mortgage loans serviced by the Bank became delinquent and resulted in foreclosure actions. The Bank's foreclosure inventory grew substantially from 2008 through 2010.

(2) In connection with certain foreclosures of loans in its residential mortgage servicing portfolio, the Bank:

(a) filed or caused to be filed in state and federal courts affidavits executed by its employees making various assertions, such as the amount of the principal and interest due or the fees and expenses chargeable to the borrower, in which the affiant represented that the assertions in the affidavit were made based on personal knowledge or based on a review by the affiant of the relevant books and records, when, in many cases, they were not based on such personal knowledge or review of the relevant books and records;

(b) filed or caused to be filed in state and federal courts, or in local land records offices, numerous affidavits that were not properly notarized, including those not signed or affirmed in the presence of a notary;

2

(c)  failed to devote to its foreclosure processes adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training; and

(d)  failed to sufficiently oversee outside counsel and other third-party providers handling foreclosure-related services.

(3)  By reason of the conduct set forth above, the Bank engaged in unsafe or unsound banking practices.

Pursuant to the authority vested in him by the Federal Deposit Insurance Act, as amended, 12 U.S.C. § 1818(b), the Comptroller hereby ORDERS that:

## ARTICLE II

## COMPLIANCE COMMITTEE

(1)  The Board shall maintain a Compliance Committee of at least three (3) Bank or Holding Company directors, of which at least two (2) may not be employees or officers of the Bank or any of its subsidiaries or affiliates.  In the event of a change of the membership, the name of any new member shall be submitted to the Examiner-in-Charge for Large Bank Supervision at the Bank ("Examiner-in-Charge").  The Compliance Committee shall be responsible for monitoring and coordinating the Bank's compliance with the provisions of this Order.  The Compliance Committee shall meet at least monthly and maintain minutes of its meetings.

(2)  Within ninety (90) days of this Order, and within thirty (30) days after the end of each quarter thereafter, the Compliance Committee shall submit a written progress report to the

3

Board setting forth in detail actions taken to comply with each Article of this order, and the results and status of those actions.

(3) The Board shall forward a copy of the Compliance Committee's report, with any additional comments by the Board, to the Deputy Comptroller for Large Bank Supervision ("Deputy Comptroller") and the Examiner-in-Charge within ten (10) days of receiving such report.

## ARTICLE III

## COMPREHENSIVE ACTION PLAN

(1) Within sixty (60) days of this Order, the Bank shall submit to the Deputy Comptroller and the Examiner-in-Charge an acceptable plan containing a complete description of the actions that are necessary and appropriate to achieve compliance with Articles IV through XII of this Order ("Action Plan"). In the event the Deputy Comptroller asks the Bank to revise the Action Plan, the Bank shall promptly make the requested revisions and resubmit the Action Plan to the Deputy Comptroller and the Examiner-in-Charge. Following acceptance of the Action Plan by the Deputy Comptroller, the Bank shall not take any action that would constitute a significant deviation from, or material change to, the requirements of the Action Plan or this Order, unless and until the Bank has received a prior written determination of no supervisory objection from the Deputy Comptroller.

(2) The Board shall ensure that the Bank achieves and thereafter maintains compliance with this Order, including, without limitation, successful implementation of the Action Plan. The Board shall further ensure that, upon implementation of the Action Plan, the Bank achieves and maintains effective mortgage servicing, foreclosure, and loss mitigation activities (as used

4

herein, the phrase "loss mitigation" shall include, but not be limited to, activities related to special forbearances, modifications, short refinances, short sales, cash-for-keys, and deeds-in-lieu of foreclosure and be referred to as either "Loss Mitigation" or "Loss Mitigation Activities"), as well as associated risk management, compliance, quality control, audit, training, staffing, and related functions.  In order to comply with these requirements, the Board shall:

(a)  require the timely reporting by Bank management of such actions directed by the Board to be taken under this Order;

(b)  follow-up on any non-compliance with such actions in a timely and appropriate manner; and

(c)  require corrective action be taken in a timely manner for any non-compliance with such actions.

(3)  The Action Plan shall address, at a minimum:

(a)  financial resources to develop and implement an adequate infrastructure to support existing and/or future Loss Mitigation and foreclosure activities and ensure compliance with this Order;

(b)  organizational structure, managerial resources, and staffing to support existing and/or future Loss Mitigation and foreclosure activities and ensure compliance with this Order;

(c)  metrics to measure and ensure the adequacy of staffing levels relative to existing and/or future Loss Mitigation and foreclosure activities, such as limits for the number of loans assigned to a Loss Mitigation employee, including the single point of contact as hereinafter defined, and deadlines to review loan modification documentation, make loan modification decisions, and provide responses to borrowers;

5

(d) governance and controls to ensure compliance with all applicable federal and state laws (including the U.S. Bankruptcy Code and the Servicemembers Civil Relief Act ("SCRA")), rules, regulations, and court orders and requirements, as well as the Membership Rules of MERSCORP, servicing guides of the Government Sponsored Enterprises ("GSEs") or investors, including those with the Federal Housing Administration and those required by the Home Affordable Modification Program ("HAMP"), and loss share agreements with the Federal Deposit Insurance Corporation (collectively "Legal Requirements"), and the requirements of this Order.

(4) The Action Plan shall specify timelines for completion of each of the requirements of Articles IV through XII of this Order. The timelines in the Action Plan shall be consistent with any deadlines set forth in this Order.

## ARTICLE IV

### COMPLIANCE PROGRAM

(1) Within sixty (60) days of this Order, the Bank shall submit to the Deputy Comptroller and the Examiner-in-Charge an acceptable compliance program to ensure that the mortgage servicing and foreclosure operations, including Loss Mitigation and loan modification, comply with all applicable Legal Requirements, OCC supervisory guidance, and the requirements of this Order and are conducted in a safe and sound manner ("Compliance Program"). The Compliance Program shall be implemented within one hundred twenty (120) days of this Order. Any corrective action timeframe in the Compliance Program that is in excess of one hundred twenty (120) days must be approved by the Examiner-in-Charge. The Compliance Program shall include, at a minimum:

(a)  appropriate written policies and procedures to conduct, oversee, and monitor mortgage servicing, Loss Mitigation, and foreclosure operations;

(b)  processes to ensure that all factual assertions made in pleadings, declarations, affidavits, or other sworn statements filed by or on behalf of the Bank are accurate, complete, and reliable; and that affidavits and declarations are based on personal knowledge or a review of the Bank's books and records when the affidavit or declaration so states;

(c)  processes to ensure that affidavits filed in foreclosure proceedings are executed and notarized in accordance with state legal requirements and applicable guidelines, including jurat requirements;

(d)  processes to review and approve standardized affidavits and declarations for each jurisdiction in which the Bank files foreclosure actions to ensure compliance with applicable laws, rules and court procedures;

(e)  processes to ensure that the Bank has properly documented ownership of the promissory note and mortgage (or deed of trust) under applicable state law, or is otherwise a proper party to the action (as a result of agency or other similar status) at all stages of foreclosure and bankruptcy litigation, including appropriate transfer and delivery of endorsed notes and assigned mortgages or deeds of trust at the formation of a residential mortgage-backed security, and lawful and verifiable endorsement and successive assignment of the note and mortgage or deed of trust to reflect all changes of ownership;

(f)  processes to ensure that a clear and auditable trail exists for all factual information contained in each affidavit or declaration, in support of each of the charges that are listed, including whether the amount is chargeable to the borrower and/or claimable by the investor;

7

(g) processes to ensure that foreclosure sales (including the calculation of the default period, the amounts due, and compliance with notice requirements) and post-sale confirmations are in accordance with the terms of the mortgage loan and applicable state and federal law requirements;

(h) processes to ensure that all fees, expenses, and other charges imposed on the borrower are assessed in accordance with the terms of the underlying mortgage note, mortgage, or other customer authorization with respect to the imposition of fees, charges, and expenses, and in compliance with all applicable Legal Requirements and OCC supervisory guidance;

(i) processes to ensure that the Bank has the ability to locate and secure all documents, including the original promissory notes if required, necessary to perform mortgage servicing, foreclosure and Loss Mitigation, or loan modification functions;

(j) ongoing testing for compliance with applicable Legal Requirements and OCC supervisory guidance that is completed by qualified persons with requisite knowledge and ability (which may include internal audit) who are independent of the Bank's business lines;

(k) measures to ensure that policies, procedures, and processes are updated on an ongoing basis as necessary to incorporate any changes in applicable Legal Requirements and OCC supervisory guidance;

(l) processes to ensure the qualifications of current management and supervisory personnel responsible for mortgage servicing and foreclosure processes and operations, including collections, Loss Mitigation and loan modification, are appropriate and a determination of whether any staffing changes or additions are needed;

8

(m) processes to ensure that staffing levels devoted to mortgage servicing and foreclosure processes and operations, including collections, Loss Mitigation, and loan modification, are adequate to meet current and expected workload demands;

(n) processes to ensure that workloads of mortgage servicing, foreclosure and Loss Mitigation, and loan modification personnel, including single point of contact personnel as hereinafter defined, are reviewed and managed. Such processes, at a minimum, shall assess whether the workload levels are appropriate to ensure compliance with the requirements of Article IX of this Order, and necessary adjustments to workloads shall promptly follow the completion of the reviews. An initial review shall be completed within ninety (90) days of this Order, and subsequent reviews shall be conducted semi-annually;

(o) processes to ensure that the risk management, quality control, audit, and compliance programs have the requisite authority and status within the organization so that appropriate reviews of the Bank's mortgage servicing, Loss Mitigation, and foreclosure activities and operations may occur and deficiencies are identified and promptly remedied;

(p) appropriate training programs for personnel involved in mortgage servicing and foreclosure processes and operations, including collections, Loss Mitigation, and loan modification, to ensure compliance with applicable Legal Requirements and supervisory guidance; and

(q) appropriate procedures for customers in bankruptcy, including a prohibition on collection of fees in violation of bankruptcy's automatic stay (11 U.S.C. § 362), the discharge injunction (11 U.S.C. § 524), or any applicable court order.

## ARTICLE V

## THIRD PARTY MANAGEMENT

(1)  Within sixty (60) days of this Order, the Bank shall submit to the Deputy
Comptroller and the Examiner-in-Charge acceptable policies and procedures for outsourcing
foreclosure or related functions, including Loss Mitigation and loan modification, and property
management functions for residential real estate acquired through or in lieu of foreclosure, to any
agent, independent contractor, consulting firm, law firm (including local counsel in foreclosure
or bankruptcy proceedings retained to represent the interests of the owners of mortgages),
property management firm, or other third-party (including any affiliate of the Bank) ("Third-
Party Providers").  Third-party management policies and procedures shall be implemented within
one hundred twenty (120) days of this Order.  Any corrective action timetable that is in excess of
one hundred twenty (120) days must be approved by the Examiner-in-Charge.  The policies and
procedures shall include, at a minimum:

(a)  appropriate oversight to ensure that Third-Party Providers comply with all
applicable Legal Requirements, OCC supervisory guidance (including applicable portions of
OCC Bulletin 2001-47), and the Bank's policies and procedures;

(b)  measures to ensure that all original records transferred from the Bank to
Third-Party Providers (including the originals of promissory notes and mortgage documents)
remain within the custody and control of the Third-Party Provider (unless filed with the
appropriate court or the loan is otherwise transferred to another party), and are returned to the
Bank or designated custodians at the conclusion of the performed service, along with all other
documents necessary for the Bank's files, and that the Bank retains imaged copies of significant
documents sent to Third-Party Providers;

10

(c) measures to ensure the accuracy of all documents filed or otherwise utilized on behalf of the Bank or the owners of mortgages in any judicial or non-judicial foreclosure proceeding, related bankruptcy proceeding, or in other foreclosure-related litigation, including, but not limited to, documentation sufficient to establish ownership of the promissory note and/or right to foreclose at the time the foreclosure action is commenced;

(d) processes to perform appropriate due diligence on potential and current Third-Party Provider qualifications, expertise, capacity, reputation, complaints, information security, document custody practices, business continuity, and financial viability, and to ensure adequacy of Third-Party Provider staffing levels, training, work quality, and workload balance;

(e) processes to ensure that contracts provide for adequate oversight, including requiring Third-Party Provider adherence to Bank foreclosure processing standards, measures to enforce Third-Party Provider contractual obligations, and processes to ensure timely action with respect to Third-Party Provider performance failures;

(f) processes to ensure periodic reviews of Third-Party Provider work for timeliness, competence, completeness, and compliance with all applicable Legal Requirements and supervisory guidance, and to ensure that foreclosures are conducted in a safe and sound manner;

(g) processes to review customer complaints about Third-Party Provider services;

(h) processes to prepare contingency and business continuity plans that ensure the continuing availability of critical third-party services and business continuity of the Bank, consistent with federal banking agency guidance, both to address short-term and long-term service disruptions and to ensure an orderly transition to new service providers should that become necessary;

11

(i) a review of fee structures for Third-Party Providers to ensure that the method of compensation considers the accuracy, completeness, and legal compliance of foreclosure filings and is not based solely on increased foreclosure volume and/or meeting processing timelines; and

(j) a certification process for law firms (and recertification of existing law firm providers) that provide residential mortgage foreclosure and bankruptcy services for the Bank, on a periodic basis, as qualified to serve as Third-Party Providers to the Bank including that attorneys are licensed to practice in the relevant jurisdiction and have the experience and competence necessary to perform the services requested.

## ARTICLE VI

## MORTGAGE ELECTRONIC REGISTRATION SYSTEM

(1) Within sixty (60) days of this Order, the Bank shall submit to the Deputy Comptroller and the Examiner-in-Charge an acceptable plan to ensure appropriate controls and oversight of the Bank's activities with respect to the Mortgage Electronic Registration System ("MERS") and compliance with MERSCORP's membership rules, terms, and conditions ("MERS Requirements") ("MERS Plan"). The MERS Plan shall be implemented within one hundred twenty (120) days of this Order. Any corrective action timetable that is in excess of one hundred twenty (120) days must be approved by the Examiner-in-Charge. The MERS Plan shall include, at a minimum:

(a) processes to ensure that all mortgage assignments and endorsements with respect to mortgage loans serviced or owned by the Bank out of MERS' name are executed only by a certifying officer authorized by MERS and approved by the Bank;

12

(b)  processes to ensure that all other actions that may be taken by MERS certifying officers (with respect to mortgage loans serviced or owned by the Bank) are executed by a certifying officer authorized by MERS and approved by the Bank;

(c)  processes to ensure that the Bank maintains up-to-date corporate resolutions from MERS for all Bank employees and third-parties who are certifying officers authorized by MERS, and up-to-date lists of MERS certifying officers;

(d)  processes to ensure compliance with all MERS Requirements and with the requirements of the MERS Corporate Resolution Management System ("CRMS");

(e)  processes to ensure the accuracy and reliability of data reported to MERSCORP and MERS, including monthly system-to-system reconciliations for all MERS mandatory reporting fields, and daily capture of all rejects/warnings reports associated with registrations, transfers, and status updates on open-item aging reports.  Unresolved items must be maintained on open-item aging reports and tracked until resolution.  The Bank shall determine and report whether the foreclosures for loans serviced by the Bank that are currently pending in MERS' name are accurate and how many are listed in error, and describe how and by when the data on the MERSCORP system will be corrected; and

(f)  an appropriate MERS quality assurance workplan, which clearly describes all tests, test frequency, sampling methods, responsible parties, and the expected process for open-item follow-up, and includes an annual independent test of the control structure of the system-to-system reconciliation process, the reject/warning error correction process, and adherence to the Bank's MERS Plan.

(2)  The Bank shall include MERS and MERSCORP in its third-party vendor

management process, which shall include a detailed analysis of potential vulnerabilities,

including information security, business continuity, and vendor viability assessments.

## ARTICLE VII

### FORECLOSURE REVIEW

(1)  Within forty-five (45) days of this Order, the Bank shall retain an independent

consultant acceptable to the Deputy Comptroller and the Examiner-in-Charge to conduct an

independent review of certain residential foreclosure actions regarding individual borrowers with

respect to the Bank's mortgage servicing portfolio.  The review shall include residential

foreclosure actions or proceedings (including foreclosures that were in process or completed) for

loans serviced by the Bank, whether brought in the name of the Bank, the investor, the mortgage

note holder, or any agent for the mortgage note holder (including MERS), that have been

pending at any time from January 1, 2009 to December 31, 2010, as well as residential

foreclosure sales that occurred during this time period ("Foreclosure Review").

(2)  Within fifteen (15) days of the engagement of the independent consultant described

in this Article, but prior to the commencement of the Foreclosure Review, the Bank shall submit

to the Deputy Comptroller and the Examiner-in-Charge for approval an engagement letter that

sets forth:

(a)  the methodology for conducting the Foreclosure Review, including: (i) a

description of the information systems and documents to be reviewed, including the selection of

criteria for cases to be reviewed; (ii) the criteria for evaluating the reasonableness of fees and

penalties; (iii) other procedures necessary to make the required determinations (such as through

14

interviews of employees and third parties and a process for submission and review of borrower

claims and complaints); and (iv) any proposed sampling techniques.  In setting the scope and

review methodology under clause (i) of this sub-paragraph, the independent consultant may

consider any work already done by the Bank or other third-parties on behalf of the Bank.  The

engagement letter shall contain a full description of the statistical basis for the sampling methods

chosen, as well as procedures to increase the size of the sample depending on results of the initial

sampling;

(b)  expertise and resources to be dedicated to the Foreclosure Review;

(c)  completion of the Foreclosure Review within one hundred twenty (120) days

from approval of the engagement letter; and

(d) a written commitment that any workpapers associated with the Foreclosure

Review shall be made available to the OCC immediately upon request.

(3)  The purpose of the Foreclosure Review shall be to determine, at a minimum:

(a)  whether at the time the foreclosure action was initiated or the pleading or

affidavit filed (including in bankruptcy proceedings and in defending suits brought by

borrowers), the foreclosing party or agent of the party had properly documented ownership of the

promissory note and mortgage (or deed of trust) under relevant state law, or was otherwise a

proper party to the action as a result of agency or similar status;

(b)  whether the foreclosure was in accordance with applicable state and federal

law, including but not limited to the SCRA and the U.S. Bankruptcy Code;

(c)  whether a foreclosure sale occurred when an application for a loan

modification or other Loss Mitigation was under consideration; when the loan was performing in

accordance with a trial or permanent loan modification; or when the loan had not been in default

15

for a sufficient period of time to authorize foreclosure pursuant to the terms of the mortgage loan documents and related agreements;

(d)  whether, with respect to non-judicial foreclosures, the procedures followed with respect to the foreclosure sale (including the calculation of the default period, the amounts due, and compliance with notice periods) and post-sale confirmations were in accordance with the terms of the mortgage loan and state law requirements;

(e)  whether a delinquent borrower's account was only charged fees and/or penalties that were permissible under the terms of the borrower's loan documents, applicable state and federal law, and were reasonable and customary;

(f)  whether the frequency that fees were assessed to any delinquent borrower's account (including broker price opinions) was excessive under the terms of the borrower's loan documents, and applicable state and federal law;

(g)  whether Loss Mitigation Activities with respect to foreclosed loans were handled in accordance with the requirements of the HAMP, and consistent with the policies and procedures applicable to the Bank's proprietary loan modifications or other loss mitigation programs, such that each borrower had an adequate opportunity to apply for a Loss Mitigation option or program, any such application was handled properly, a final decision was made on a reasonable basis, and was communicated to the borrower before the foreclosure sale; and

(h)  whether any errors, misrepresentations, or other deficiencies identified in the Foreclosure Review resulted in financial injury to the borrower or the mortgagee.

(4)  The independent consultant shall prepare a written report detailing the findings of the Foreclosure Review ("Foreclosure Report"), which shall be completed within thirty (30) days of

completion of the Foreclosure Review. Immediately upon completion, the Foreclosure Report shall be submitted to the Deputy Comptroller, Examiner-in-Charge, and the Board.

(5)  Within forty-five (45) days of submission of the Foreclosure Report to the Deputy Comptroller, Examiner-in-Charge, and the Board, the Bank shall submit to the Deputy Comptroller and the Examiner-in-Charge a plan, acceptable to the OCC, to remediate all financial injury to borrowers caused by any errors, misrepresentations, or other deficiencies identified in the Foreclosure Report, by:

(a)  reimbursing or otherwise appropriately remediating borrowers for impermissible or excessive penalties, fees, or expenses, or for other financial injury identified in accordance with this Article; and

(b)  taking appropriate steps to remediate any foreclosure sale where the foreclosure was not authorized as described in this Article.

(6)  Within sixty (60) days after the OCC provides supervisory non-objection to the plan set forth in paragraph (5) above, the Bank shall make all reimbursement and remediation payments and provide all credits required by such plan, and provide the OCC with a report detailing such payments and credits.

## ARTICLE VIII

### MANAGEMENT INFORMATION SYSTEMS

(1)  Within sixty (60) days of this Order, the Bank shall submit to the Deputy Comptroller and the Examiner-in-Charge an acceptable plan for operation of its management information systems ("MIS") for foreclosure and Loss Mitigation or loan modification activities to ensure the timely delivery of complete and accurate information to permit effective decision-

making. The MIS plan shall be implemented within one hundred twenty (120) days of this

Order. Any corrective action timeframe that is in excess of one hundred twenty (120) days must

be approved by the Examiner-in-Charge. The plan shall include, at a minimum:

(a) a description of the various components of MIS used by the Bank for

foreclosure and Loss Mitigation or loan modification activities;

(b) a description of and timetable for any needed changes or upgrades to:

(i) monitor compliance with all applicable Legal Requirements and

supervisory guidance, and the requirements of this Order;

(ii) ensure the ongoing accuracy of records for all serviced mortgages,

including, but not limited to, records necessary to establish ownership and the right to foreclose

by the appropriate party for all serviced mortgages, outstanding balances, and fees assessed to

the borrower; and

(iii) measures to ensure that Loss Mitigation, loan foreclosure, and

modification staffs have sufficient and timely access to information provided by the borrower

regarding loan foreclosure and modification activities;

(c) testing the integrity and accuracy of the new or enhanced MIS to ensure that

reports generated by the system provide necessary information for adequate monitoring and

quality controls.


## ARTICLE IX

## MORTGAGE SERVICING

(1) Within sixty (60) days of this Order, the Bank shall submit to the Deputy

Comptroller and the Examiner-in-Charge an acceptable plan, along with a timeline for ensuring

18

effective coordination of communications with borrowers, both oral and written, related to Loss
Mitigation or loan modification and foreclosure activities: (i) to ensure that communications are
timely and effective and are designed to avoid confusion to borrowers; (ii) to ensure continuity in
the handling of borrowers' loan files during the Loss Mitigation, loan modification, and
foreclosure process by personnel knowledgeable about a specific borrower's situation; (iii) to
ensure reasonable and good faith efforts, consistent with applicable Legal Requirements, are
engaged in Loss Mitigation and foreclosure prevention for delinquent loans, where appropriate;
and (iv) to ensure that decisions concerning Loss Mitigation or loan modifications continue to be
made and communicated in a timely fashion. Prior to submitting the plan, the Bank shall
conduct a review to determine whether processes involving past due mortgage loans or
foreclosures overlap in such a way that they may impair or impede a borrower's efforts to
effectively pursue a loan modification, and whether Bank employee compensation practices
discourage Loss Mitigation or loan modifications. The plan shall be implemented within one
hundred twenty (120) days of this Order. Any corrective action timeframe that is in excess of
one hundred twenty (120) days must be approved by the Examiner-in-Charge. The plan shall
include, at a minimum:

（a) measures to ensure that staff handling Loss Mitigation and loan modification
requests routinely communicate and coordinate with staff processing the foreclosure on the
borrower's property;

（b) appropriate deadlines for responses to borrower communications and requests
for consideration of Loss Mitigation, including deadlines for decision-making on Loss Mitigation
Activities, with the metrics established not being less responsive than the timelines in the HAMP
program;

(c)  establishment of an easily accessible and reliable single point of contact for each borrower so that the borrower has access to an employee of the Bank to obtain information throughout the Loss Mitigation, loan modification, and foreclosure processes;

(d)  a requirement that written communications with the borrower identify such single point of contact along with one or more direct means of communication with the contact;

(e)  measures to ensure that the single point of contact has access to current information and personnel (in-house or third-party) sufficient to timely, accurately, and adequately inform the borrower of the current status of the Loss Mitigation, loan modification, and foreclosure activities;

(f)  measures to ensure that staff are trained specifically in handling mortgage delinquencies, Loss Mitigation, and loan modifications;

(g)  procedures and controls to ensure that a final decision regarding a borrower's loan modification request (whether on a trial or permanent basis) is made and communicated to the borrower in writing, including the reason(s) why the borrower did not qualify for the trial or permanent modification (including the net present value calculations utilized by the Bank, if applicable) by the single point of contact within a reasonable period of time before any foreclosure sale occurs;

(h)  procedures and controls to ensure that when the borrower's loan has been approved for modification on a trial or permanent basis that:  (i) no foreclosure or further legal action predicate to foreclosure occurs, unless the borrower is deemed in default on the terms of the trial or permanent modification; and (ii) the single point of contact remains available to the borrower and continues to be referenced on all written communications with the borrower;

(i) policies and procedures to enable borrowers to make complaints regarding the Loss Mitigation or modification process, denial of modification requests, the foreclosure process, or foreclosure activities which prevent a borrower from pursuing Loss Mitigation or modification options, and a process for making borrowers aware of the complaint procedures;

(j) procedures for the prompt review, escalation, and resolution of borrower complaints, including a process to communicate the results of the review to the borrower on a timely basis;

(k) policies and procedures to ensure that payments are credited in a prompt and timely manner; that payments, including partial payments to the extent permissible under the terms of applicable legal instruments, are applied to scheduled principal, interest, and/or escrow before fees, and that any misapplication of borrower funds is corrected in a prompt and timely manner;

(l) policies and procedures to ensure that timely information about Loss Mitigation options is sent to the borrower in the event of a delinquency or default, including plain language notices about loan modification and the pendency of foreclosure proceedings;

(m) policies and procedures to ensure that foreclosure, Loss Mitigation, and loan modification documents provided to borrowers and third parties are appropriately maintained and tracked, and that borrowers generally will not be required to resubmit the same documented information that has already been provided, and that borrowers are notified promptly of the need for additional information; and

(n) policies and procedures to consider loan modifications or other Loss Mitigation Activities with respect to junior lien loans owned by the Bank, and to factor the risks associated with such junior lien loans into loan loss reserving practices, where the Bank services

21

the associated first lien mortgage and becomes aware that such first lien mortgage is delinquent

or has been modified. Such policies and procedures shall require the ongoing maintenance of

appropriate loss reserves for junior lien mortgages owned by the Bank and the charge-off of such

junior lien loans in accordance with FFIEC retail credit classification guidelines.

## ARTICLE X

### RISK ASSESSMENT AND RISK MANAGEMENT PLAN

(1) Within ninety (90) days of this Order, the Bank shall conduct a written,

comprehensive assessment of the Bank's risks in mortgage servicing operations, particularly in

the areas of Loss Mitigation, foreclosure, and the administration and disposition of other real

estate owned, including, but not limited to, operational, compliance, transaction, legal, and

reputational risks.

(2) The Bank shall develop an acceptable plan to effectively manage or mitigate

identified risks on an ongoing basis, with oversight by the Bank's senior risk managers, senior

management, and the Board. The assessment and plan shall be provided to the Deputy

Comptroller and the Examiner-in-Charge within one hundred twenty (120) days of this Order.

## ARTICLE XI

### APPROVAL, IMPLEMENTATION AND REPORTS

(1) The Bank shall submit the written plans, programs, policies, and procedures required

by this Order for review and determination of no supervisory objection to the Deputy

Comptroller and the Examiner-in-Charge within the applicable time periods set forth in Articles

II through X. The Bank shall adopt the plans, programs, policies, and procedures required by

22

this Order upon submission to the OCC, and shall immediately make any revisions requested by the Deputy Comptroller or the Examiner-in-Charge. Upon adoption, the Bank shall immediately implement the plans, programs, policies, and procedures required by this Order and thereafter fully comply with them.

(2) During the term of this Order, the required plans, programs, policies, and procedures shall not be amended or rescinded in any material respect without the prior written approval of the Deputy Comptroller or the Examiner-in-Charge (except as otherwise provided in this Order).

(3) During the term of this Order, the Bank shall revise the required plans, programs, policies, and procedures as necessary to incorporate new or changes to applicable Legal Requirements and supervisory guidelines.

(4) The Board shall ensure that the Bank has processes, personnel, and control systems to ensure implementation of and adherence to the plans, programs, policies, and procedures required by this Order.

(5) Within thirty (30) days after the end of each calendar quarter following the date of this Order, the Bank shall submit to the OCC a written progress report detailing the form and manner of all actions taken to secure compliance with the provisions of this Order and the results thereof. The progress report shall include information sufficient to validate compliance with this Order, based on a testing program acceptable to the OCC that includes, if required by the OCC, validation by third-party independent consultants acceptable to the OCC. The OCC may, in writing, discontinue the requirement for progress reports or modify the reporting schedule.

(6) All communication regarding this Order shall be sent to:

    (a) Sally G. Belshaw
        Deputy Comptroller for Large Bank Supervision
        Office of the Comptroller of the Currency
        250 E Street SW
        Washington, DC 20219

    (b) Grace E. Dailey
        Examiner-in-Charge
        National Bank Examiners
        800 Nicollet Mall, BC-MN-H17O
        Minneapolis, MN 55402

## ARTICLE XII

## COMPLIANCE AND EXTENSIONS OF TIME

(1) If the Bank contends that compliance with any provision of this Order would not be feasible or legally permissible for the Bank, or requires an extension of any timeframe within this Order, the Board shall submit a written request to the Deputy Comptroller asking for relief. Any written requests submitted pursuant to this Article shall include a statement setting forth in detail the special circumstances that prevent the Bank from complying with a provision, that require the Deputy Comptroller to exempt the Bank from a provision, or that require an extension of a timeframe within this Order.

(2) All such requests shall be accompanied by relevant supporting documentation, and to the extent requested by the Deputy Comptroller, a sworn affidavit or affidavits setting forth any other facts upon which the Bank relies. The Deputy Comptroller's decision concerning a request is final and not subject to further review.

24

## ARTICLE XIII

## OTHER PROVISIONS

(1)  Although this Order requires the Bank to submit certain actions, plans, programs, policies, and procedures for the review or prior written determination of no supervisory objection by the Deputy Comptroller or the Examiner-in-Charge, the Board has the ultimate responsibility for proper and sound management of the Bank.

(2)  In each instance in this Order in which the Board is required to ensure adherence to, and undertake to perform certain obligations of the Bank, it is intended to mean that the Board shall:

(a)  authorize and adopt such actions on behalf of the Bank as may be necessary for the Bank to perform its obligations and undertakings under the terms of this Order;

(b)  require the timely reporting by Bank management of such actions directed by the Board to be taken under the terms of this Order;

(c)  follow-up on any material non-compliance with such actions in a timely and appropriate manner; and

(d)  require corrective action be taken in a timely manner of any material non-compliance with such actions.

(3)  If, at any time, the Comptroller deems it appropriate in fulfilling the responsibilities placed upon him by the several laws of the United States to undertake any action affecting the Bank, nothing in this Order shall in any way inhibit, estop, bar, or otherwise prevent the Comptroller from so doing.

(4)  This Order constitutes a settlement of the cease and desist proceeding against the Bank contemplated by the Comptroller, based on the unsafe or unsound practices described in

25

the Comptroller's Findings set forth in Article I of this Order. Provided, however, that nothing in this Order shall prevent the Comptroller from instituting other enforcement actions against the Bank or any of its institution-affiliated parties, including, without limitation, assessment of civil money penalties, based on the findings set forth in this Order, or any other findings.

(5) This Order is and shall become effective upon its execution by the Comptroller, through his authorized representative whose hand appears below. The Order shall remain effective and enforceable, except to the extent that, and until such time as, any provision of this Order shall be amended, suspended, waived, or terminated in writing by the Comptroller.

(6) Any time limitations imposed by this Order shall begin to run from the effective date of this Order, as shown below, unless the Order specifies otherwise.

(7) The terms and provisions of this Order apply to the Bank and its subsidiaries, even though those subsidiaries are not named as parties to this Order. The Bank shall integrate any foreclosure or mortgage servicing activities done by a subsidiary into its plans, policies, programs, and processes required by this Order. The Bank shall ensure that its subsidiaries comply with all terms and provisions of this Order.

(8) This Order is intended to be, and shall be construed to be, a final order issued pursuant to 12 U.S.C. § 1818(b), and expressly does not form, and may not be construed to form, a contract binding the Comptroller or the United States. Nothing in this Order shall affect any action against the Bank or its institution-affiliated parties by a bank regulatory agency, the United States Department of Justice, or any other law enforcement agency, to the extent permitted under applicable law.

(9)  The terms of this Order, including this paragraph, are not subject to amendment or modification by any extraneous expression, prior agreements, or prior arrangements between the parties, whether oral or written.

(10)  Nothing in the Stipulation and Consent or this Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation and Consent or this Order.

(11)  The Bank consents to the issuance of this Order before the filing of any notices, or taking of any testimony or adjudication, and solely for the purpose of settling this matter without a formal proceeding being filed.

IT IS SO ORDERED, this 13th day of April, 2011.

_____/s/_____
Sally G. Belshaw
Deputy Comptroller
Large Bank Supervision

**UNITED STATES OF AMERICA
DEPARTMENT OF THE TREASURY
COMPTROLLER OF THE CURRENCY**

| | | |
|---|---|---|
| | ) | |
| **In the Matter of:** | ) | |
| U.S. Bank National Association | ) | |
| Cincinnati, Ohio | ) | AA-EC-11-18 |
| and | ) | |
| U.S. Bank National Association ND | ) | |
| Fargo, North Dakota | ) | |
| | ) | |

**STIPULATION AND CONSENT TO THE ISSUANCE
OF A CONSENT ORDER**

The Comptroller of the Currency of the United States of America ("Comptroller")

intends to impose a cease and desist order on U.S. Bank National Association, Cincinnati,

Ohio and U.S. Bank National Association ND, Fargo, North Dakota (collectively,

"Bank") pursuant to 12 U.S.C. § § 1818(b), for unsafe or unsound banking practices

relating to mortgage servicing and the initiation and handling of foreclosure proceedings.

The Bank, in the interest of compliance and cooperation, enters into this

Stipulation and Consent to the Issuance of a Consent Order ("Stipulation") and consents

to the issuance of a Consent Order, dated April 13, 2011 ("Consent Order");

In consideration of the above premises, the Comptroller, through his authorized

representative, and the Bank, through its duly elected and acting Board of Directors,

stipulate and agree to the following:

## ARTICLE I
## JURISDICTION

(1)     The Bank is a national banking association chartered and examined by the Comptroller pursuant to the National Bank Act of 1864, as amended, 12 U.S.C. § 1 *et seq.*

(2)     The Comptroller is "the appropriate Federal banking agency" regarding the Bank pursuant to 12 U.S.C. §§ 1813(q) and 1818(b).

(3)     The Bank is an "insured depository institution" within the meaning of 12 U.S.C. § 1818(b)(1).

(4)     For the purposes of, and within the meaning of 12 C.F.R. §§ 5.3(g)(4), 5.51(c)(6), and 24.2(e)(4), this Consent Order shall not be construed to be a "cease and desist order" or "consent order", unless the OCC informs the Bank otherwise.


## ARTICLE II
## AGREEMENT

(1)     The Bank, without admitting or denying any wrongdoing, consents and agrees to issuance of the Consent Order by the Comptroller.

(2)     The Bank consents and agrees that the Consent Order shall (a) be deemed an "order issued with the consent of the depository institution" pursuant to 12 U.S.C. § 1818(h)(2), (b) become effective upon its execution by the Comptroller through his authorized representative, and (c) be fully enforceable by the Comptroller pursuant to 12 U.S.C. § 1818(i).

(3)     Notwithstanding the absence of mutuality of obligation, or of consideration, or of a contract, the Comptroller may enforce any of the commitments or

2

obligations herein undertaken by the Bank under his supervisory powers, including

12 U.S.C. § 1818(i), and not as a matter of contract law. The Bank expressly

acknowledges that neither the Bank nor the Comptroller has any intention to enter into a

contract.

(4)     The Bank declares that no separate promise or inducement of any kind has

been made by the Comptroller, or by his agents or employees, to cause or induce the

Bank to consent to the issuance of the Consent Order and/or execute the Consent Order.

(5)     The Bank expressly acknowledges that no officer or employee of the

Comptroller has statutory or other authority to bind the United States, the United States

Treasury Department, the Comptroller, or any other federal bank regulatory agency or

entity, or any officer or employee of any of those entities to a contract affecting the

Comptroller's exercise of his supervisory responsibilities.

(6)     The OCC releases and discharges the Bank from all potential liability for a

cease and desist order that has been or might have been asserted by the OCC based on the

banking practices described in the Comptroller's Findings set forth in Article I of the

Consent Order, to the extent known to the OCC as of the effective date of the Consent

Order. However, the banking practices alleged in Article I of the Consent Order may be

utilized by the OCC in other future enforcement actions against the Bank or its

institution-affiliated parties, including, without limitation, to assess civil money penalties

or to establish a pattern or practice of violations or the continuation of a pattern or

practice of violations. This release shall not preclude or affect any right of the OCC to

determine and ensure compliance with the terms and provisions of this Stipulation or the

Consent Order.

3

(7)    The terms and provisions of the Stipulation and the Consent Order shall be binding upon, and inure to the benefit of, the parties hereto and their successors in interest. Nothing in this Stipulation or the Consent Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under this Stipulation or the Consent Order.

## ARTICLE III
## WAIVERS

(1)    The Bank, by consenting to this Stipulation, waives:

(a)    the issuance of a Notice of Charges pursuant to 12 U.S.C. § 1818(b);

(b)    any and all procedural rights available in connection with the issuance of the Consent Order;

(c)    all rights to a hearing and a final agency decision pursuant to 12 U.S.C. §§ 1818(b) and (h), 12 C.F.R. Part 19;

(d)    all rights to seek any type of administrative or judicial review of the Consent Order;

(e)    any and all claims for fees, costs, or expenses against the Comptroller, or any of his agents or employees, related in any way to this enforcement matter or this Consent Order, whether arising under common law or under the terms of any statute, including, but not limited to, the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

(f)    any and all rights to challenge or contest the validity of the Consent Order.

4

## ARTICLE IV
## OTHER PROVISIONS

(1)     The provisions of this Stipulation shall not inhibit, estop, bar, or otherwise
prevent the Comptroller from taking any other action affecting the Bank if, at any time, it
deems it appropriate to do so to fulfill the responsibilities placed upon it by the several
laws of the United States of America.

(2)     Nothing in this Stipulation shall preclude any proceedings brought by the
Comptroller to enforce the terms of this Consent Order, and nothing in this Stipulation
constitutes, nor shall the Bank contend that it constitutes, a waiver of any right, power, or
authority of any other representative of the United States or an agency thereof, including,
without limitation, the United States Department of Justice, to bring other actions deemed
appropriate.

(3)     The terms of the Stipulation and the Consent Order are not subject to
amendment or modification by any extraneous expression, prior agreements or prior
arrangements between the parties, whether oral or written.

IN TESTIMONY WHEREOF, the undersigned, authorized by the Comptroller as
his representative, has hereunto set her hand on behalf of the Comptroller.


/s/                                                            April 13, 2011
_____        _____
Sally G. Belshaw                                      Date
Deputy Comptroller
Large Bank Supervision


5

IN TESTIMONY WHEREOF, the undersigned, as the duly elected and acting

Board of Directors of the Bank, have hereunto set their hands on behalf of the Bank.


_____/s/_____

Richard K. Davis

_____3/31/11_____

Date


_____/s/_____

Andrew Cecere

_____3/30/11_____

Date


_____/s/_____

Terrance R. Dolan

_____3/30/11_____

Date


_____/s/_____

Richard C. Hartnack

_____3/31/2011_____

Date


_____/s/_____

Joseph C. Hoesley

_____3/31/11_____

Date


_____/s/_____

Pamela A. Joseph

_____March 30, 2011_____

Date


_____/s/_____

Richard B. Payne, Jr.

_____3/30/11_____

Date


_____/s/_____

Jeffry H. von Gillern

_____3/30/11_____

Date


6

| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br>Avis Copelin<br>144 N Valley St<br>Burbank CA 91505<br>818.600.1024 | FOR COURT USE ONLY |

**FILED**

FEB 1 8 2014

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

☒ *Individual appearing without attorney*
☐ *Attorney for:*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br>Avis Richelle Copelin | CASE NO.: 13-32580 RK |
|---|---|
| | CHAPTER: 7 |
| | **RESPONSE TO MOTION FOR ORDER TO TERMINATE, ANNUL, MODIFY, OR CONDITION THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 AND DECLARATION(S) IN SUPPORT** |
| | DATE: 2/25/2014<br>TIME: 11:00 am<br>COURTROOM: 1675<br>PLACE: 255 E Temple St, Los Angeles CA 90012 |
| Debtor(s). | |

**Movant:** Amber Investments Group/Great Western Capital LLC/Nara Investments Group LLC

**Respondent:** ☒ Debtor   ☐ Trustee   ☐ Other: _____

*GENERAL NOTE: A request for additional time is **not** usually an adequate response in opposition to the Motion. This Response, supporting declaration(s) and other admissible evidence must be filed with the court and served pursuant to the LBRs.*

1.  ☐ **NON-OPPOSITION:** Notice is hereby given that the Respondent does not oppose the granting of the Motion.

> **NOTE:** *If you do not oppose the Motion, there is no need to appear at the hearing scheduled in the Motion.*

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 1                    F 4001-1.RFS.RESPONSE

*Exhibit C*

2.  ☐ **LIMITED OPPOSITION -- APPEARANCE REQUIRED:** Respondent opposes the Motion only to the extent that it seeks immediate relief from stay. Respondent requests that no lock out, foreclosure, or repossession shall take place before (*specify date*):

    The reason for this request is (*specify*):

3.  ☒ **OPPOSITION -- APPEARANCE REQUIRED:** Notice is hereby given that the Respondent opposes the granting of the Motion for the reasons set forth below.

    a.  Respondent disputes the allegations/evidence contained in the Motion. As shown in the Declaration(s) filed with this Response:

        ☐ The value of the Property is $_____, based upon (*specify*):

        ☐ Total amount of debt (loans) on the Property is $_____.

        ☐ More payments have been made to Movant than the Motion has accounted for. True and correct copies of canceled checks proving the payments that have been made are attached as Exhibit _____.

        ☒ The Property is necessary for an effective reorganization. Respondent has filed or intends to file a plan requiring the Property. A true and correct copy of the Plan is attached as Exhibit _____.

        ☐ The Property is insured. A true and correct copy of the policy currently in effect is attached as Exhibit _____.

        ☒ The Movant's description of the status of the unlawful detainer proceeding is not accurate. See attached Declaration for Respondent's evidence.

        ☐ Respondent denies that this bankruptcy was filed in bad faith or improperly. See attached Declaration containing Respondent's evidence.

        ☒ Debtor would be prejudiced if the lawsuit or administrative proceeding is allowed to continue outside the bankruptcy court. See attached Declaration regarding Respondent's contentions.

        ☐ Service of the Motion:  ☐ Not all parties were served  ☐ Insufficient notice of the hearing

        ☐ Incorrect address used for (*specify*): _____

        ☒ Other (*specify*):  See Page 3 and Debtor's Declaration
            Movant does not hold the valid legal secured or possessory interest in the property necessary to be granted relief.

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

F 4001-1.RFS.RESPONSE

b.  Respondent asserts:

☐ Case has been converted from chapter _____ to chapter _____.

☐ All postpetition arrears will be cured by the hearing date.

☐ The Debtor has equity in the Property in the amount of $_____.

☐ Movant has an equity cushion of $_____ which is sufficient to provide
   adequate protection.

☒ The Property is necessary for an effective reorganization because (*specify reasons why*):
   The property is part of respondent's estate and necessary to effectively reorganize; a renovation and
   a substantial addition can be made to the property which can add significant value to the property
   and to the estate

☒ The Motion should be denied because (*specify*):
   1. Movant is in violation of a U.S. Federal Consent Decree. A relief from stay would be in violation of
   the Federal Consent Decree. Movant was noticed that they were in violation of multiple state and
   federal statutes prior to completion of the purchase transaction. However, Movant has deliberately
   coninued to ignore said warning further proving that the automatic stay is necessary.
   2. The subject property has not been discharged. The property was not added to the bankruptcy estate
   until after the discharge; therefore it has not been discharged as to the debtor. Debtor has filed a
   request for a Ch. 11 conversion. The property is necessary for an effective reorganization; and Debtor
   is requesting the stay continue so that debtor may challenge the motion for relief on behalf of the
   estate on the grounds that the Movant does not have grounds for a relief from stay because they do
   not hold a secured interest in the property; and do not have perfected title. Respondent is further
   requesting the opportunity to perform an independent audit of the chain of title. The subject mortgage
   and/or note was securitized and became a part of a trust. Therefore an audit is necessary to determine
   proper chain of title leading up to the wrongful foreclosure. Debtor is requesting that the Ch. 11
   conversion be granted so that debtor will be provided with the opportunity to challenge the foreclosure.
   3. The property is debtor's primary residence and should be protected by automatic stay in order to
   pursue the proper remedies to defend the property against a wrongful foreclosure. Debtor is
   requesting the opportunity for a hearing after a Ch. 11 Conversion has hopefully been granted to
   legally challenge the validity of Movant's alleged interest in the subject property. If a relief is granted
   debtor would be prejudiced and at risk of losing her primary residence while she is in the process of
   pursuing legal recourse against the wrongful foreclosure.
   4. Movant does not qualify as a bona fide 3rd party purchaser because they were placed on notice
   prior to completion of the foreclosure transaction that there were multiple violations of state and federal
   law. They chose to proceed with the purchase of the property regardless of said notice. At the time
   that Movant was placed on notice regarding the illegalities of the sale, a deed had not been recorded
   and the transaction had not been completed. Any relief afforded to Movant should be pursued against
   the lender and the foreclosing parties; not the debtor. Furthermore, Movants are investors and their
   intent to purchase the property was for investment purposes; they did not purchase the property with
   the intent of making it a primary residence. They would not suffer any prejudice or hardship that could
   not be adequately compensated if they are denied the motion for relief from stay. Furthermore, had
   they refused to move forward with the sale upon notice; they would not have suffered any hardship.
   5. Movant does not have perfected title which is necessary for an unlawful detainer action.

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                            Page 3                        F 4001-1.RFS.RESPONSE

4. **EVIDENCE IN SUPPORT OF RESPONSE AND SUPPORTING PAPERS:**

> ***NOTE REGARDING SUPPORTING PAPERS:*** *Declarations in opposition to the Motion **MUST** be attached hereto. Any individual signing a declaration must have personal knowledge of the facts stated in it and should attach any supporting documents, if possible. You may attach a Memorandum of Points and Authorities if you desire, but it is not required.*

> ***NOTE REGARDING SERVICE OF RESPONSE AND SUPPORTING PAPERS:*** *Pursuant to the LBRs, you must file with the clerk this completed Response along with supporting declaration(s) signed under penalty of perjury, AND also serve a copy of the Response and declaration(s) on the Movant's attorney (or Movant, if no attorney), the trustee, the United States trustee, and all other parties to the Motion.*

Pursuant to the LBRs, attached hereto are the following papers in support of this Response:

☒ Declaration by Debtor   ☐ Declaration by Debtor's attorney

☐ Declaration by trustee   ☐ Declaration by trustee's attorney

☐ Declaration by appraiser   ☐ Memorandum of Points and Authorities (*optional*)

☒ Other (*specify*): Debtor reserves the right for Oral Argument; and presentation of additional documentation, if necessary at the scheduled hearing

Date: 2/18/2014

Respectfully submitted,

Avis Copelin
Printed name of Respondent

_____
Printed name of law firm (if applicable)

Avis Copelin
Signature

Avis Copelin
Printed name of Respondent or attorney for Respondent

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                    Page 4                    **F 4001-1.RFS.RESPONSE**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document entitled: **RESPONSE TO MOTION FOR ORDER TO TERMINATE, ANNUL, MODIFY, OR CONDITION THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 AND DECLARATION(S) IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:**
On (*date*) 2/18/2014____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Carol Unruh, Esq.
Law Offices of Carol G Unruh
3000 S Robertson Blvd, Suite 215
Los Angeles CA 90034

Judge Robert Kwan
255 E Temple St
Suite 1675
Los Angeles CA 90012

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 02/18/2014 | Christian Copelin | *Christian Copelin* |
| Date | Printed Name | Signature |

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

I, Avis Copelin, the debtor in the bankruptcy case number 13-32580; declare under penalty of perjury that the foregoing is true and correct:

I was the legal owner and the trustor of the Deed of Trust dated August 30, 2005 for the property commonly known as 4629 Talofa Ave, Toluca Lake CA 91602 at the time of the alleged foreclosure sale held on or about August 12, 2013.

The property was wrongfully foreclosed upon on or about August 12, 2013. On or about August 13, 2013 between approximately 10am-12pm I received notice from Movants that they were the new owners of the property subject to a foreclosure sale that occurred the previous day. Immediately upon receipt of the notice, Debtor made a claim of possessory interest by responding with telephone calls to an office number and a representative named Juan Zermeno. An email was also forwarded to Mr. Zermeno, as well as, a facsimile to the Movant's office. All of my responses indicated that the foreclosure sale was in violation of multiple state and federal statutes and Movants were immediately put on notice that they would be held liable for being in violation of the statutes; if they concluded the foreclosure transaction. Debtor did not receive any response to the subject notices. The initial notice of possessory interest dated August 13, 2013 was provided prior to completion of the foreclosure transaction; therefore Movants do not qualify as bona fide 3rd party purchasers. (Notices Attached as Exhibit A).

I subsequently received a 24 Hour Notice of Abandonment on August 23, 2013 from legal counsel for Movants, David Rendall, who was retained to file an unlawful detainer action against the property. Notices were again sent out to all interested parties, including legal counsel regarding my claim of possessory interest in the property. Movants are alleging that Debtor did not claim a possessory interest in the property until 3 months after an unlawful detainer lawsuit was filed. As previously indicated, Debtor notified Movants, as well as, their agents and representatives, of a possessory interest in the property on multiple occasions prior to the date on which a claim of right to possession was filed in the unlawful detainer action. (Notices attached as Exhibit A).

Furthermore, from approximately August-October 2013, Debtor had multiple telephone and email communications with Jeff Brandolino, a representative who contacted Debtor on behalf of Movant regarding the subject property. Movants contacted Debtor through the representative to negotiate a settlement regarding the property. Therefore, Movants' allegations that Debtor did not claim a possessory interest in the property prior to filing a claim of right to possession in the unlawful detainer action are not factual. (Notices attached hereto as Exhibit A).

Regardless of the multiple communications notifying Movants of a possessory interest in the property and the illegalities regarding the sale, Movants chose to ignore the notices and recorded the deed of trust on August 15, 2013 (Attached hereto as Exhibit B). The subject deed of trust is invalid because it does not provide evidence of value for consideration of the property; and because the foreclosure sale was in violation of multiple state and federal statutes. In particular the foreclosure sale was in violation of a federal consent decree (Attached hereto as Exhibit C).

Regardless of the fact that Movants were notified of Debtor's claim regarding the property, and the obvious fact that Debtor's name was indicated on the Trustee's Deed Upon Sale that they subsequently recorded in the Los Angeles County Recorder's office; they intentionally and deliberately chose not to name Debtor in the unlawful detainer action. Furthermore, Movants were also notified that debtor was the sole occupant of the property; yet they failed to properly name Debtor as a party to the unlawful

detainer action. California state law mandates that any defendant whose identity is known must be named in a lawsuit. Regardless, of the fact that Movants received multiple communications by telephone, email, and fax; they still intentionally refused to name her in the unlawful detainer action.

Movants further allege that an unlawful detainer proceeding is the proper venue to determine possessory interest in the property. It is common knowledge, that an unlawful detainer court is not the proper venue to determine a possessory interest; particularly when the possessory interest in the subject property is in dispute. The bankruptcy court holds jurisdiction regarding matters where a possessory interest is the subject of dispute and has the authority to provide automatic stay protection to the property on behalf of a Debtor's estate to prevent any further unlawful activity. If a relief from stay is granted, Debtor would suffer undue hardship as a result of the Movants' deliberate and intentional pursuit to proceed with an unlawful detainer action regardless of the fact that they are in violation of multiple state and federal statutes.

Lastly, Debtor has requested a Chapter 11 conversion which is the proper venue to provide protection to Debtor's estate until Debtor has been able to properly challenge the illegalities regarding the wrongful sale of her property which rightfully belongs to Debtor's estate. Debtor is requesting that this matter be continued until a decision has been made in the Chapter 11 conversion hearing.

Executed this 18th Day of February 2014 in the County of Los Angeles, in the State of California.

Avis Copelin, Debtor

----- Forwarded Message -----
**From:** "avisj1g2@yahoo.com" <avisj1g2@yahoo.com>
**To:** "juan@fiphomes.com" <juan@fiphomes.com>
**Sent:** Tuesday, August 13, 2013 11:28 AM
**Subject:** 4629 Talofa Ave, Toluca Lake CA 91602 — CEASE AND DESIST NOTICE

ATTN: GREAT WESTERN CAPITAL, LLC C/O JUAN ZERMENO, MANAGER


This email is to put you on notice that the subject property, commonly known as 4629 Talofa
Ave, Toluca Lake CA 91602 which was sold yesterday, August 12, 2013 at 9am, pursuant to
Trustee Sale No 2012-0008 is currently in litigation. Furthermore, the Trustee, the Lender and
the Mortgage Servicer are in violation of multiple mandatory requirements of California and
federal statutes.

You are being placed on notice that if you proceed with the purchase of this property you will be
subject to legal action for participation in the violation of these state and federal statutes, as well.
Furthermore, you will be subject to legal action to the full extent of the law.

If you refuse to cancel your transaction voluntarily, legal action will be taken immediately to
void and cancel the sale of the subject property.

Avis Copelin
4629 Talofa Ave
Toluca Lake CA 91602
818.600.1024


Sent from my iPad

*Exhibit A*

Avis Copelin
4629 Talofa Ave
Toluca Lake, CA 91602
Contact: 818.600.1024


August 13, 2013


Great Western Capital, LLC
26650 The Old Road, Suite 300
Valencia, CA 91381
Office: 661.964.1732
Fax: 661.310.0077


RE:  4629 TALOFA AVE --- CEASE AND DESIST NOTICE


TO WHOM IT MAY CONCERN:

Attached, please find a copy of an email that has been forwarded to Juan Zermeno, Manager, of
your office. This letter is to put you on notice that the subject property, commonly known as
4629 Talofa Ave, Toluca Lake CA 91602 which was sold yesterday, August 12, 2013 at 9am,
pursuant to Trustee Sale No 2012-0008 is currently in litigation. Furthermore, the Trustee, the
Lender and the Mortgage Servicer are in violation of multiple mandatory requirements of
California and federal statutes.

You are being placed on notice that if you proceed with the purchase of this property you will be
subject to legal action for also participating in the violation of state and federal statutes, as well.
Furthermore, you will be subject to legal action to the full extent of the law.

If you refuse to cancel your transaction voluntarily, legal action will be taken immediately to
void and cancel the sale of the subject property.


*Avis Copelin*

Avis Copelin
4629 Talofa Ave
Toluca Lake CA 91602
818.600.1024

From:              avisj1g2@yahoo.com

To Name:           Membersmanagers

To Number:         661-310-0077

Subject:           CEASE AND DESIST NOTICE

**Attempt 1:**
Date/Time:         8-13-2013 11:58:41 AM (GMT-07:00)
Pages:             3
Transmission Time: 01:06
Reason:            Successful Send

Thank you for using MetroFax®. If you have any questions,
please contact support@metrofax.com.

Avis Copelin
4629 Talofa Ave
Toluca Lake, CA 91602
Contact: 818.600.1024

August 23, 2013

David M. Rendall, Esq.
Group One Legal Professional Corporation
26893 Bouquet Canyon Road, Suite 427
Santa Clarita, CA 91350
Tel: 661.702.4651
Fax: 661.702.4652

Great Western Capital, LLC
26650 The Old Road, Suite 300
Valencia, CA 91381
Office: 661.964.1732
Fax: 661.310.0077

Amber Investments Group
Nara Investments Group LLC
c/o Great Western Capital, LLC
26650 The Old Road, Suite 300
Valencia, CA 91381
Office: 661.964.1732
Fax: 661.310.0077

RE:    4629 TALOFA AVE, TOLUCA LAKE CA 91602
        24 Hour Notice of Belief of Abandonment
        CEASE AND DESIST NOTICE

To All Parties Involved:

This email is regarding the 24 Hour Notice of Belief of Abandonment that was authorized on
behalf of Great Western Capital, LLC, et al. through their legal counsel - Group One Legal.

At approximately 430pm today, August 23, 2013, I received a 24 Hour Notice of Belief of
Abandonment that was posted on my property at approximately 1pm. Immediately upon receipt
of the posting, at approximately 436pm, I contacted the office of Group One Legal. I requested
to speak to the attorney and was advised by the operator that he was unavailable. I was then

informed that I could leave a message; and subsequently informed that I would be transferred to another employee. I was transferred to an unidentified female employee. I informed her that I was calling regarding the 24 Hour Notice of Belief of Abandonment. I informed her that the property was occupied and that the owners were well aware of that fact. She then made continual demands that I either provide her with documentation to validate my claim of possession; or the alleged owners would arrive at my property within the 24 hour period to take possession of my property. I do not intend to be threatened and coerced out of my property. Her behavior was considered a threat and constituted harassment.

Great Western Capital, LLC is fully aware of the fact that the subject property is currently occupied and that it has NOT been abandoned. They have been placed on notice on multiple occasions regarding my occupancy, possession and ownership of the property.

This email is yet another notice to Great Western Capital, LLC; as well as, Amber Investments Group, Nara Investments Group LLC and their legal counsel, Group One Legal that I currently occupy this property and was legally in possession of the property prior to the alleged and illegal foreclosure sale.

Furthermore, Great Western Capital LLC was placed on notice of the illegalities of the sale of the property on August 13, 2013 immediately upon receipt of the notice of ownership that was posted at the subject property on August 13, 2013.

Therefore, please be advised that this email also serves as a Cease and Desist Notice of any and all further activity regarding your efforts to claim possession of this property outside of the legal system.

*Avis Copelin*

Avis Copelin
818.600.1024

P.S. Attached please find copies of previous notices that have been forwarded to Great Western and its representative Juan Zermeno regarding the subject property.



**From:** 

**To Name:** 

**To Number:** 

**Subject:** 24 HOUR NOTICE OF ABANDONMENT/CEASE AND DESIST NOTICE

**Attempt 1:**

**Date/Time:** 

**Pages:** 6

**Transmission Time:** 

**Reason:** Successful Send

Thank you for using MetroFax. If you have any questions, please contact @metrofax.com

8/24/2013 4:50 AM        From: Avis Copelin / 818.643.2217   To: 16617024652                    1 of 6

# FAX

**TO: DAVID RENDALL ESQ**

**FAX NUMBER: (661) 702-4652**

**FROM: AVIS COPELIN**

**FAX NUMBER: (818) 643-2217**

**DATE: 8/24/2013 4:49 AM**

**REGARDING: 24 HOUR NOTICE OF ABANDONMENT/CEASE AND DESIST NOTICE**

**PHONE NUMBER FOR FOLLOW-UP: 818.600.1024**

**COMMENTS:**

**URGENT INFORMATION - PLEASE READ IMMEDIATELY - THE ABOVE MENTIONED PROPERTY IS NOT ABANDONED**

jeff@brandolinogroup.com                      Search Mail      Search Web           Avis

**33 results**

| | | | | |
|---|---|---|---|---|
| ☐ | Brandolino Gro | October News | Inbox | Oct 15 |
| ☐ | Jeff Brandolino | re[8]: 4629 Talofa | Inbox | Sep 11 |
| ☐ | avisj1g2@yahoo | Re: re[6]: 4629 Talofa | Sent | Sep 10 |
| ☐ | Avis C | Re: re[6]: 4629 Talofa | Sent | Sep 9 |
| ☐ | Jeff Brandolino | re[6]: 4629 Talofa | Inbox | Sep 9 |
| ☐ | avisj1g2@yaho | Re: re[4]: 4629 Talofa | Sent | Sep 9 |
| ☐ | Jeff Brandolino | re[4]: 4629 Talofa | Inbox | Sep 6 |
| ☐ | avisj1g2@yaho | Re: re[2]: 4629 Talofa | Sent | Sep 6 |
| ☐ | Jeff Brandolino | re[2]: 4629 Talofa | Inbox | Sep 6 |
| ☐ | avisj1g2@yaho | Re: 4629 Talofa | Sent | Sep 5 |
| ☐ | avisj1g2@yaho | Re: 4629 Talofa | Sent | Aug 29 |
| ☐ | Jeff Brandolino | 4629 Talofa | Inbox | Aug 29 |
| ☐ | Jeff Brandolino | re[2]: Prequal 2.pdf | Inbox | Aug 29 |
| ☐ | avisj1g2@yaho | Re: Prequal 2.pdf | Sent | Aug 24 |
| ☐ | Jeff Brandolino | Re: Prequal 2.pdf | Inbox | Aug 23 |
| ☐ | Jeff Brandolino | Re: Prequal 2.pdf | Inbox | Aug 23 |
| ☐ | avisj1g2@yaho | Re: Prequal 2.pdf | Sent | Aug 23 |
| ☐ | Jeff Brandolino | re: Prequal 2.pdf | Inbox | Aug 22 |
| ☐ | avisj1g2@yaho | Prequal 2.pdf | Sent | Aug 21 |
| ☐ | avisj1g2@yaho | Re: re[8]: 4629 Talofa ave | Sent | Aug 21 |
| ☐ | Jeff Brandolino | Re: re[8]: 4629 Talofa ave | Inbox | Aug 21 |
| ☐ | avisj1g2@yaho | Re: re[6]: 4629 Talofa ave | Sent | Aug 21 |
| ☐ | Jeff Brandolino | re[6]: 4629 Talofa ave | Inbox | Aug 19 |
| ☐ | avisj1g2@yaho | Re: re[4]: 4629 Talofa ave | Sent | Aug 18 |
| ☐ | Jeff Brandolino | Re: re[4]: 4629 Talofa ave | Inbox | Aug 18 |
| ☐ | avisj1g2@yaho | Re: re[4]: 4629 Talofa ave | Sent | Aug 17 |
| ☐ | Jeff Brandolino | Re: re[4]: 4629 Talofa ave | Inbox | Aug 17 |
| ☐ | avisj1g2@yaho | Re: re[4]: 4629 Talofa ave | Sent | Aug 17 |
| ☐ | Jeff Brandolino | re[4]: 4629 Talofa ave | Inbox | Aug 16 |
| ☐ | avisj1g2@yaho | Re: re[2]: 4629 Talofa ave | Sent | Aug 16 |
| ☐ | Jeff Brandolino | re[2]: 4629 Talofa ave | Inbox | Aug 16 |
| ☐ | avisj1g2@yaho | Re: 4629 Talofa ave | Sent | Aug 16 |
| ☐ | Jeff Brandolino | 4629 Talofa ave | Inbox | Aug 16 |

Refine by

∨ Sender
Jeff Brandolino jeff@b
avisj1g2@yahoo.com
Avis Copelin avisj1g2
Brandolino Group - R

∨ Attachments
PDF

∨ Folder
Inbox
Sent

› Date

› Status

RECORDING REQUESTED BY:
Ronald D. Roup, a Law Corporation

NARA INVESTMENTS GROUP LLC
26650 The Old Road, Suite 300
Valencia, CA 91381



AND WHEN RECORDED TO:
Forward Tax Statements to
the address given above

_____
SPACE ABOVE LINE FOR RECORDER'S USE

TS #: 2012-0008                    Order #: 6533220

# TRUSTEE'S DEED UPON SALE

A.P.N.: 2420-020-011          Transfer Tax: $        City Tax: $

The Grantee Herein was not The Foreclosing Beneficiary.
The Amount of The Unpaid Debt was $1,847,439.42
The Amount Paid By The Grantee Was $724,461.06
Said Property Is In The City of LOS ANGELES, TOLUCA LAKE AREA, County of LOS ANGELES

**Ronald D. Roup, a Law Corporation** , as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

AMBER INVESTMENTS GROUP 30% GREAT WESTERN CAPITAL LLC 40% NARA INVESTMENTS GROUP LLC 30%

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of  Los Angeles, State of California, described as follows:

Legal description attached hereto and made a part hereof exhibit "A"

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by Avis R. Copelin, an unmarried woman as Trustor, dated 8/30/2005 of the Official Records in the office of the Recorder of Los Angeles, California under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust recorded on 9/2/2005, instrument number 05-2125528, of Official records. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

*Exhibit B*

# TRUSTEE'S DEED UPON SALE

TS #: 2012-0008
Loan #: 1044559476
Order #: 6533220

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on 8/12/2013. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being $724,461.06, in lawful money of the United States, in pro per, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, **Ronald D. Roup, a Law Corporation** , as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws.

Date: 8/12/2013

Ronald D. Roup, a Law Corporation

By: _____

Ronald D. Roup, Substituted Trustee

State of California } ss.
County of Orange }
On 8/14/2013 before me, Laura Ridenour Notary Public, personally appeared **Ronald D Roup**, who proved to me on the basis of satisfactory evidence to be the person (s) whose name (s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature (s) on the instrument the person (s), or the entity upon behalf of which the person (s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY** under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

Laura Ridenour

ORDER NO: 6533220
REFERENCE NO: 2012-0008

# EXHIBIT "A"

THE LAND REFERRED TO IN THIS GUARANTEE IS SITUATED IN THE STATE OF
CALIFORNIA, CITY OF LOS ANGELES, COUNTY OF LOS ANGELES AND IS DESCRIBED AS
FOLLOWS:

THAT PORTION OF LOT 190 OF THE PROPERTY OF THE LANKERSHIM RANCH LAND AND WATER CO., IN
THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON MAP
RECORDED IN BOOK 31 PAGE 39 ET SEQ., OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF SAID LOT 190, BEING A POINT IN THE CENTER LINE OF
FORMAN AVENUE, FORMERLY LAGUNA AVENUE, 50 FEET WIDE; THENCE ALONG SAID CENTER LINE,
NORTH 1° 15' 57" WEST 330 FEET; THENCE NORTH 88° 51' 28" EAST 175 FEET TO THE TRUE POINT OF
BEGINNING; THENCE CONTINUING NORTH 88° 51' 28" EAST 180 FEET; THENCE SOUTH 1° 15' 57" EAST 80
FEET; THENCE SOUTH 88° 51' 28" WEST 180 FEET; THENCE NORTH 1° 15' 57" WEST 80 FEET TO THE TRUE
POINT OF BEGINNING.

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JAN 15 2014

Sherri R. Carter, Executive Officer/Clerk
BY _____, Deputy
P. Valle

1  Avis Copelin
2  4629 Talofa Ave
   Toluca Lake, CA 91602
3  818-600-1024

4  Plaintiff Pro Per

5

6

7

8          SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

9              NORTH CENTRAL DISTRICT – UNLIMITED CIVIL

10

11

12  Avis Copelin,

13              Plaintiff,                    Case Number: EC 061141

14  vs.

15

16  US Bank National Association, As Trustee    MOTION TO ACCEPT AND TAKE NOTICE
    for the First Franklin Mortgage Loan Trust,  OF PLAINTIFF'S NOTICE TO THE COURT
17  Mortgage Pass Through Certificate, Series    AND ALL PARTIES OF INTENT TO FILE
    2005-FF10; Select Portfolio Servicing, Inc;  FEDERAL LAW SUIT ASSERTING
18  First Franklin A Division of Nat City Bank   DEFENDANTS, THE HONORABLE COURT, *et*
    of IN; Ronald D Roup, A Law Corporation;     *al.*, ARE IN VIOLATION OF UNITED STATES
19  Great Western Capital, LLC; Does 1-100       OF AMERICA CONSENT ORDER
20  Inclusive,

21  ,                                            2. 19-14
                                                 8:30 AM
22              Defendants
                                                 NCB — B
23

24

25

26  COMES NOW, Avis Copelin ("Copelin"), *pro per*, hereby submits this **MOTION TO ACCEPT AND**

27  **TAKE NOTICE OF PLAINTIFF'S NOTICE TO THE COURT AND ALL PARTIES OF**

NOTICE OF INTENT                        1

Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

APR - 4 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES OF AMERICA, *et al.*,

    Plaintiffs,

    v.

BANK OF AMERICA CORP. *et al.*,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

12 0361

Civil Action No. _____

## CONSENT JUDGMENT

WHEREAS, Plaintiffs, the United States of America and the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, Wyoming, the Commonwealths of Kentucky, Massachusetts, Pennsylvania and Virginia, and the District of Columbia filed their complaint on March 12, 2012, alleging that Bank of America Corporation, Bank of America, N.A., BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP, Countrywide Home Loans, Inc., Countrywide Financial Corporation, Countrywide Mortgage Ventures, LLC, and Countrywide Bank, FSB (collectively, for the sake

EX 1

of convenience only, "Defendant") violated, among other laws, the Unfair and Deceptive Acts

and Practices laws of the Plaintiff States, the False Claims Act, the Financial Institutions Reform,

Recovery, and Enforcement Act of 1989, the Servicemembers Civil Relief Act, and the

Bankruptcy Code and Federal Rules of Bankruptcy Procedure;

WHEREAS, the parties have agreed to resolve their claims without the need for

litigation;

WHEREAS, Defendant has consented to entry of this Consent Judgment without trial or

adjudication of any issue of fact or law and to waive any appeal if the Consent Judgment is

entered as submitted by the parties;

WHEREAS, Defendant, by entering into this Consent Judgment, does not admit the

allegations of the Complaint other than those facts deemed necessary to the jurisdiction of this

Court;

WHEREAS, the intention of the United States and the States in effecting this settlement

is to remediate harms allegedly resulting from the alleged unlawful conduct of the Defendant;

AND WHEREAS, Defendant has agreed to waive service of the complaint and summons

and hereby acknowledges the same;

NOW THEREFORE, without trial or adjudication of issue of fact or law, without this

Consent Judgment constituting evidence against Defendant, and upon consent of Defendant, the

Court finds that there is good and sufficient cause to enter this Consent Judgment, and that it is

therefore ORDERED, ADJUDGED, AND DECREED:

## I.    JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331, 1345, 1355(a), and 1367, and under 31 U.S.C. § 3732(a) and (b), and over

2

Defendant. The Complaint states a claim upon which relief may be granted against Defendant. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) and 31 U.S.C. § 3732(a).

## II.    SERVICING STANDARDS

2.    Bank of America, N.A. shall comply with the Servicing Standards, attached hereto as Exhibit A, in accordance with their terms and Section A of Exhibit E, attached hereto.

## III.    FINANCIAL TERMS

3.    *Payment Settlement Amounts.* Bank of America Corporation and/or its affiliated entities shall pay or cause to be paid into an interest bearing escrow account to be established for this purpose the sum of $2,382,415,075, which sum shall be added to funds being paid by other institutions resolving claims in this litigation (which sum shall be known as the "Direct Payment Settlement Amount") and which sum shall be distributed in the manner and for the purposes specified in Exhibit B. Payment shall be made by electronic funds transfer no later than seven days after the Effective Date of this Consent Judgment, pursuant to written instructions to be provided by the United States Department of Justice. After the required payment has been made, Defendant shall no longer have any property right, title, interest or other legal claim in any funds held in escrow. The interest bearing escrow account established by this Paragraph 3 is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation Section 1.468B-1 of the U.S. Internal Revenue Code of 1986, as amended. The Monitoring Committee established in Paragraph 8 shall, in its sole discretion, appoint an escrow agent ("Escrow Agent") who shall hold and distribute funds as provided herein. All costs and expenses of the Escrow Agent, including taxes, if any, shall be paid from the funds under its control, including any interest earned on the funds.

4.     *Payments to Foreclosed Borrowers.* In accordance with written instructions from the State members of the Monitoring Committee, for the purposes set forth in Exhibit C, the Escrow Agent shall transfer from the escrow account to the Administrator appointed under Exhibit C $1,489,813,925.00 (the "Borrower Payment Amount") to enable the Administrator to provide cash payments to borrowers whose homes were finally sold or taken in foreclosure between and including January 1, 2008 and December 31, 2011; who submit claims for harm allegedly arising from the Covered Conduct (as that term is defined in Exhibit G hereto); and who otherwise meet criteria set forth by the State members of the Monitoring Committee. The Borrower Payment Amount and any other funds provided to the Administrator for these purposes shall be administered in accordance with the terms set forth in Exhibit C.

5.     *Consumer Relief.* Defendant shall provide $7,626,200,000 of relief to consumers who meet the eligibility criteria in the forms and amounts described in Paragraphs 1-8 of Exhibit D, and $948,000,000 of refinancing relief to consumers who meet the eligibility criteria in the forms and amounts described in Paragraph 9 of Exhibit D, to remediate harms allegedly caused by the alleged unlawful conduct of Defendant. Defendant shall receive credit towards such obligation as described in Exhibit D.

### IV. ENFORCEMENT

6.     The Servicing Standards and Consumer Relief Requirements, attached as Exhibits A and D, are incorporated herein as the judgment of this Court and shall be enforced in accordance with the authorities provided in the Enforcement Terms, attached hereto as Exhibit E.

7.     The Parties agree that Joseph A. Smith, Jr. shall be the Monitor and shall have the authorities and perform the duties described in the Enforcement Terms, attached hereto as Exhibit E.

8.       Within fifteen (15) days of the Effective Date of this Consent Judgment, the participating state and federal agencies shall designate an Administration and Monitoring Committee (the "Monitoring Committee") as described in the Enforcement Terms. The Monitoring Committee shall serve as the representative of the participating state and federal agencies in the administration of all aspects of this and all similar Consent Judgments and the monitoring of compliance with it by the Defendant.

## V.       RELEASES

9.       The United States and Defendant have agreed, in consideration for the terms provided herein, for the release of certain claims, and remedies, as provided in the Federal Release, attached hereto as Exhibit F. The United States and Defendant have also agreed that certain claims, and remedies are not released, as provided in Paragraph 11 of Exhibit F. The releases contained in Exhibit F shall become effective upon payment of the Direct Payment Settlement Amount by Defendant.

10.      The State Parties and Defendant have agreed, in consideration for the terms provided herein, for the release of certain claims, and remedies, as provided in the State Release, attached hereto as Exhibit G. The State Parties and Defendant have also agreed that certain claims, and remedies are not released, as provided in Part IV of Exhibit G. The releases contained in Exhibit G shall become effective upon payment of the Direct Payment Settlement Amount by Defendant.

## VI.      SERVICEMEMBERS CIVIL RELIEF ACT

11.      The United States and Defendant have agreed to resolve certain claims arising under the Servicemembers Civil Relief Act ("SCRA") in accordance with the terms provided in Exhibit H. Any obligations undertaken pursuant to the terms provided in Exhibit H, including

any obligation to provide monetary compensation to servicemembers, are in addition to the obligations undertaken pursuant to the other terms of this Consent Judgment. Only a payment to an individual for a wrongful foreclosure pursuant to the terms of Exhibit H shall be reduced by the amount of any payment from the Borrower Payment Amount.

## VII.  OTHER TERMS

12.     The United States and any State Party may withdraw from the Consent Judgment and declare it null and void with respect to that party if the Consumer Relief Payments (as that term is defined in Exhibit F (Federal Release)) required under this Consent Judgment are not made and such non-payment is not cured within thirty days of written notice by the party.

13.     This Court retains jurisdiction for the duration of this Consent Judgment to enforce its terms. The parties may jointly seek to modify the terms of this Consent Judgment, subject to the approval of this Court. This Consent Judgment may be modified only by order of this Court.

14.     The Effective Date of this Consent Judgment shall be the date on which the Consent Judgment has been entered by the Court and has become final and non-appealable. An order entering the Consent Judgment shall be deemed final and non-appealable for this purpose if there is no party with a right to appeal the order on the day it is entered.

15.     This Consent Judgment shall remain in full force and effect for three and one-half years from the date it is entered ("the Term"), at which time Defendant's obligations under the Consent Judgment shall expire, except that, pursuant to Exhibit E, Bank of America, N.A. shall submit a final Quarterly Report for the last quarter or portion thereof falling within the Term and cooperate with the Monitor's review of said report, which shall be concluded no later than six months after the end of the Term. Defendant shall have no further obligations under this

6

Consent Judgment six months after the expiration of the Term, but the Court shall retain jurisdiction for purposes of enforcing or remedying any outstanding violations that are identified in the final Monitor Report and that have occurred but not been cured during the Term.

16.     Except as otherwise agreed in Exhibit B, each party to this litigation will bear its own costs and attorneys' fees associated with this litigation.

17.     Nothing in this Consent Judgment shall relieve Defendant of its obligation to comply with applicable state and federal law.

18.     The United States and Defendant further agree to the additional terms contained in Exhibit I hereto.

19.     The sum and substance of the parties' agreement and of this Consent Judgment are reflected herein and in the Exhibits attached hereto.  In the event of a conflict between the terms of the Exhibits and paragraphs 1-18 of this summary document, the terms of the Exhibits shall govern.

SO ORDERED this ___4___ day of ___April_____, 2012

_Rosemary M Coley_

UNITED STATES DISTRICT JUDGE

7

For the United States:

TONY WEST
Acting Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
Tel.:   202-514-9500
Fax:   202-514-0238

For the Department of the Treasury:

GEORGE W. MADISON
General Counsel
U.S. Department of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220
Tel.:       202-622-0283
Fax:       202-622-2882

For the Federal Trade Commission
(as to Exhibit F only):

Amanda Basta
Attorney
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC  20058
Tel:   202-326-2340
Fax:   202-326-2558

For the Department of Housing and Urban
Development:

HELEN R. KANOVSKY
General Counsel
U.S. Department of Housing and Urban
Development
451 7th Street, S.W.
Washington, DC  20410
Tel.:   202-402-5023
Fax:   202-708-3389

For the Consumer Financial Protection Bureau
(as to Exhibit F only):

Lucy Morris
Deputy Enforcement Director
Consumer Financial Protection Bureau
1500 Pennsylvania Avenue, NW
(Attn:  1801 L Street)
Washington, DC  20220
Tel:   202-435-7154

8

For the State of California:

For the California Department of
Corporations:

_____
MICHAEL A. TRONCOSO
Senior Counsel to the Attorney General
455 Golden Gate Avenue, Ste. 14500
San Francisco, CA 94102-7007
Tel.:  415-703-1008
Fax:   415-703-1016

_____
JAN LYNN OWEN
Commissioner
1515 K Street, Suite 200
Sacramento, CA  95814-4052
Tel.:  916-445-7205
Fax:  916-322-1559

13

BANK OF AMERICA CORPORATION

NEIL A. COTTY
Chief Accounting Officer
Bank of America Corporation
100 North Tryon Street
Charlotte, NC 28202

BANK OF AMERICA, N.A.

NEIL A. COTTY
Chief Accounting Officer
Bank of America, N.A.
100 North Tryon Street
Charlotte, NC 28202

BAC HOME LOANS SERVICING, L.P. (f/k/a
COUNTRYWIDE HOME LOANS SERVICING,
L.P.) (through its successor-in-interest by de jure
merger, BANK OF AMERICA, N.A.)

NEIL A. COTTY
Chief Accounting Officer
Bank of America, N.A.
100 North Tryon Street
Charlotte, NC 28202

COUNTRYWIDE FINANCIAL CORPORATION

MICHAEL SCHLOESSMAN
President and Chief Executive Officer
Countrywide Financial Corporation
4500 Park Grenada
Calabasas, CA 91302

COUNTRYWIDE HOME LOANS, INC.

MICHAEL SCHLOESSMAN
President and Chief Executive Officer
Countrywide Home Loans, Inc.
4500 Park Grenada
Calabasas, CA 91302

COUNTRYWIDE MORTGAGE VENTURES,
L.L.C.

LOUIS COLATRIANO
President

debtor's obligations during the case and appropriately update the Servicer's systems of record. In connection with such reconciliation, Servicer shall reflect the waiver of any fee, expense or charge pursuant to paragraphs III.B.1.c.i or III.B.1.d.

C.    Documentation of Note, Holder Status and Chain of Assignment.

1.    Servicer shall implement processes to ensure that Servicer or the foreclosing entity has a documented enforceable interest in the promissory note and mortgage (or deed of trust) under applicable state law, or is otherwise a proper party to the foreclosure action.

2.    Servicer shall include a statement in a pleading, affidavit of indebtedness or similar affidavits in court foreclosure proceedings setting forth the basis for asserting that the foreclosing party has the right to foreclose.

3.    Servicer shall set forth the information establishing the party's right to foreclose as set forth in I.C.2 in a communication to be sent to the borrower as indicated in I.A.18.

4.    If the original note is lost or otherwise unavailable, Servicer shall comply with applicable law in an attempt to establish ownership of the note and the right to enforcement. Servicer shall ensure good faith efforts to obtain or locate a note lost while in the possession of Servicer or Servicer's agent and shall ensure that Servicer and Servicer's agents who are expected to have possession of notes or assignments of mortgage on behalf of Servicer adopt procedures that are designed to provide assurance that the Servicer or Servicer's agent would locate a note or assignment of mortgage if it is in the possession or control of the Servicer or Servicer's agent, as the case may be. In the event that Servicer prepares or causes to be prepared a lost note or lost assignment affidavit with respect to an original note or assignment lost while in Servicer's control, Servicer shall use good faith efforts to obtain or locate the note or assignment in accordance with its procedures. In the affidavit, sworn statement or other filing documenting the lost note or assignment, Servicer shall recite that Servicer has made a good faith effort in accordance with its procedures for locating the lost note or assignment.

5.    Servicer shall not intentionally destroy or dispose of original notes that are still in force.

6.    Servicer shall ensure that mortgage assignments executed by or on behalf of Servicer are executed with appropriate legal authority, accurately reflective of the completed transaction and properly acknowledged.

A-8



# Role of the Corporate Trustee
## Financial strength. Local expertise. Global reach.

It is estimated that some mortgage lenders securitized as much as 70-80% of their outstanding mortgages through the sale of Mortgage Backed Securities (MBS) in the capital markets. This process, the securitization of mortgage loans, goes back to the 1970s and has contributed to the availability and affordability of mortgage credit.

The combination of high foreclosure rates and high levels of mortgage backed securitization activity has many people attempting to understand the complex securitization process and identify the parties to the MBS transactions and their assigned responsibilities.

## Distinct Party Roles

Parties involved in a MBS transaction include the borrower, the originator, the servicer and the trustee, each with their own distinct roles, responsibilities and limitations.

The Trust Indenture Act of 1939 prohibits bond issues valued at over $5 million from being offered for sale without a formal written agreement (an indenture) signed by both the bond issuer and the bondholder, that fully discloses the particulars of the bond issue. The act also requires that a trustee be appointed for all bond issues, so that the rights of bondholders are not compromised.

*Description of Trust Indenture Act of 1939*



## What is a Mortgage Backed Security?

Residential and commercial property mortgages often are used to create Mortgage Backed Securities (MBS) by firms within the financial industry. Mortgage backed securities are financial instruments which represent an ownership in a group of mortgage loans, commonly referred to as pools, and their corresponding cash flows. Mortgage loans are purchased from banks, mortgage companies, and other originators and then assembled into pools by a governmental, quasi-governmental, or private entity and then deposited into trusts which issue securities entitling the investors to all principal and interest payments made by borrowers on the loans in the pool. This process is known as securitization.

MBS securities are brought to market by the owner of a pool of mortgages, typically referred to as the sponsor, and the transaction is structured and sold by investment bankers. A sponsor may be the originator of the mortgages or, in many circumstances, an aggregator who both originates and purchases mortgage loans from smaller originating institutions. When a pool of sufficient size and diversification has been aggregated, the sponsor will engage the appropriate parties to structure, sell and administer the mortgage loans and trust on an ongoing basis.



**U.S. Bank as Trustee**

As Trustee, U.S. Bank has no advance knowledge of when a Servicer initiates a foreclosure. U.S. Bank, as trustee:

- Does not appoint or supervise the Servicer
- Has no advance knowledge that a mortgage loan has defaulted or that a foreclosure is imminent
- Is not consulted about a foreclosure
- Does not have responsibility for the commencement, continuation or termination of any foreclosure and is not a party in any foreclosure action
- Does not manage or maintain properties in foreclosure
- Is not responsible for the approval of any loan modifications

All trustees for MBS transactions, including U.S. Bank, have no advance knowledge of when a mortgage loan has defaulted.

Trustees on MBS transactions, while named on the mortgage and on legal foreclosure documents, are not involved in the foreclosure process.

## Who initiates and Manages a Foreclosure?

U.S. Bank, as trustee for thousands of securitization transactions involving many millions of mortgages, is often mentioned in media reports about foreclosures. While trustees are listed on mortgages, and therefore in legal documents as well, as the owner of record, its interest is solely for the benefit of investors. The trustee does not have an economic or beneficial interest in the loans and has no authority to manage or otherwise take action on the loans which is reserved for the servicer.

As noted, the trustee does not play a role in initiating or managing a foreclosure process and consequently has little, if any, information relating to mortgage loan activities including a foreclosure. Depending on the particular trust and pool, the trustee may have very limited information on either the borrower or the property.

The servicer, who is selected by the Sponsor of the trust, may have to foreclose on a property if a borrower (mortgagee) does not make payments as required by the mortgage documents. Any action taken by the servicer must maximize the return on the investment made by the "beneficial owners of the trust" -- the investors.

## Servicer vs Trustee Responsibilities

Appointed by the sponsor; the Servicer is the contractual party to the trust for the benefit of investors, and performs the following responsibilities:

- Collects payments from the borrower/mortgagee
- Maintains loan level detail
- Pays property taxes and insurance (if applicable)
- Calls a default for non-payment
- Forecloses on the mortgage and maintains the related property
- Modifies mortgage terms within limitations outlined by the provisions of the Pooling and Servicing Agreement relevant to a particular MBS transaction
- Maintains the physical property to comply with local housing codes

U.S. Bank Global Corporate Trust Services, as Trustee, is responsible and accountable to the investors or holders of the securities that the mortgages are pledged against as collateral for the duties set forth in the contracts governing the transaction. These duties are carefully detailed in the contracts and are limited to the responsibilities specifically accepted by the trustee.

## How Do I Obtain Information on a Specific Mortgage Loan?

To learn more about a foreclosed property, contact the servicer for the MBS transaction that holds the mortgage as collateral. The most effective way to identify the servicer for a specific mortgage is to ask the borrower (homeowner) who they make their monthly payment to or from whom they receive their monthly statements. The firm receiving the payments and sending statements is generally the servicer for the MBS transaction and can offer more details regarding a foreclosed property.

To ensure clarity of the various participants related to a foreclosure process with MBS transactions, U.S. Bank has taken two important actions. U.S. Bank has sent notices to servicers with whom they work on MBS transactions to reinforce the importance of properly identifying U.S. Bank as Trustee for the specific trust in all foreclosure actions and filings, complying with industry servicing practices, and maintaining any foreclosures in accordance with applicable laws. Secondly, U.S. Bank established a dedicated toll-free (800) number to handle calls related to loans which identify U.S. Bank as Trustee. Our professional staff explains to callers the role of U.S. Bank as Trustee and also provides the information callers need to connect with the servicer who can best address their questions.

For more information about U.S. Bank and our role as trustee in MBS transactions, please call (800) 236-3488 between the hours of 8 a.m. and 5 p.m. Central Time, Monday through Friday.





## Why not modify mortgage terms in default?

Borrowers agree, under the terms of their mortgage, that once their asset in payment default, the lender or servicer has the right to assume ownership of the property. Whether the servicer pursues foreclosure or negotiates a modification of the loan, the goal is to maximize the return to investors. Consideration of loan modifications is limited in scope by the trust documents since mortgages in the underlying pool is applicable to the particular borrower's circumstances and federal and state laws governing loan modifications.

Regardless, the servicer is fully empowered to enter into modifications with borrowers so long as such actions comply with industry servicing practices, is allowed under the trust documents, maximizes the return to investors and complies with relevant laws.

Additional Sources of Information:
American Banker's Association White Paper, The Trustee's Role in Asset-Backed Securities, dated November 9, 2010
American Securitization Forum Statement (ASF/US-Bank/Trustee.html)
The Trust Indenture Act of 1939

# Parties to a Mortgage Backed Securities Transaction

## Borrower

The person or entity responsible for the mortgage note and making principal and interest payments in accordance with the underlying mortgage documents.

## Investment Bank/Sponsor

Responsible for structuring the MBS transaction and selling the securities to investors.

## Investor

The buyer and owner of an MBS certificate or certificates.

## Originator

The financial institution or mortgage lender who originally initiates the mortgage agreement with the borrower.

## Servicer

Appointed by the sponsor and is a contractual party to the trust, to administer the mortgage loans and to collect monthly payments (e.g. principal/interest, tax, insurance). After collection, the servicer sends the funds to the trustee who then makes payment to the investors. If a borrower (mortgagor) does not make payments to the servicer, as required by the mortgage documents, the servicer may have to foreclose on the property and provide property maintenance to maximize the return on the investment made by the "beneficial owners of the Trust" — the investors. Some MBS transactions have more than one servicer. The servicer does not own the mortgage/collateral. The trustee does not designate the loan servicers, nor are the loan servicers agents of the trustee.

## Trust

Generally a special purpose entity, such as a Real Estate Mortgage Investment Conduit (REMIC), that is formed solely to hold the mortgage collateral and to issue the securities which are then sold to investors. The trust owns the pooled mortgages. The trust conducts no other business. Certificates issued by the trust represent a financial interest in a pool of mortgages owned by the trust and is the primary source of funds for payment of interest and principal due to the investors on certificates they own.

## Trustee

An independent party, responsible for administering the trust for the benefit of investors. While the trustee is listed as the owner of record, the trustee does not have an economic or beneficial interest in the loans. The trustee is the owner of the mortgage solely for the benefit of the investors in the mortgage backed securities, who are the true beneficial owners of the mortgages. The Trustee holds a security interest in the mortgaged property by having the mortgage loans assigned in the name of the trustee for the benefit of the trust (e.g. U.S. Bank as Trustee for the MBS Trust) or in the name of MERS, a Mortgage Electronic Recording System used by many of the largest financial institutions. The duties of the trustee are administrative in nature, are clearly spelled out in the MBS transaction documents, and generally are non-discretionary in nature.

For more information about U.S. Bank and our role as trustee in MBS transactions, please call (800) 236-3488 between the hours of 8 a.m. and 5 p.m. central standard time Monday through Friday.

All of US serving your



usbank.com/corporatetrust

Investment and insurance products are:

| NOT A DEPOSIT | NOT FDIC-INSURED | MAY LOSE VALUE | NOT GUARANTEED BY THE BANK | NOT INSURED BY ANY FEDERAL GOVERNMENT AGENCY |

U.S. Bank is not responsible for and does not guarantee the products, services, performance or obligations of its affiliates.